SHORTESS, Judge.
Juon C. Williams (appellant) was dismissed from her permanent position as Licensed Practical Nurse I at Earl K. Long Memorial Hospital on December 14, 1979. Her letter of termination signed by Raymond D. Potter, Administrator of the hospital; indicated that she was being terminated because:
“... your conduct on Two North on the 3-11 shift of December 12, 1979, was completely inappropriate and unprofessional.”
*1259 The letter then specified that appellant became extremely disruptive by the use of loud and abusive language to a male patient and to the Registered Nurse in charge and that this unacceptable behavior continued for over an hour in the patient’s room and nursing area. On January 11, 1980, appellant appealed this decision. She set forth two bases for the appeal: (1) that Potter’s charges of disruptive, loud and abusive language were not true; and (2) that she was being discriminated against.[1]
A hearing before the Civil Service Commission was held. Thereafter, the Commission handed down a unanimous decision, with one Commissioner absent, which dismissed appellant’s appeal. The written opinion set forth the Commission’s findings of fact, wherein it found that:
“1. Appellant was a Practical Nurse I working at the Earl K. Long Memorial Hospital on the 8-11 shift on December 12, 1979. The registered nurse working this shift as her supervisor was Phyllis McCauley. A doctor was on duty at this nurses’ station during this shift, Dr. Gregory A. Brian.
“2. Room 201 was a ward room containing several beds. In one of the beds was an elderly male patient who had been ordered by a doctor, previously, to have a cradle placed over his chest on the bed to keep the sheets and blankets off of the injuries on his chest. The patient did not have the cradle over his chest when appellant and other nurses came on their shift on December 12, 1979. The patient did not want the cradle over his chest because he felt that the cradle holding the covers off of him made him cold. “3. At approximately 3:30 p.m., appellant was in Room 201 taking the blood pressure of the elderly male patient when R.N. Phyllis McCauley came into the room and told appellant that they needed to put the cradle over the elderly male patient. Appellant began to pull the covers off of the male patient to be able to put the cradle over his chest. The patient grabbed the covers and pulled them up and protested vigorously the placing of the cradle over his chest and taking the covers away from him. Appellant then told nurse McCauley that the patient did not want the cradle, the patient had not had the cradle in spite of previous doctors’ orders, that she saw no reason for upsetting the patient by making him have the cradle, that the placing of the cradle was only for the benefit of the “big doctors,” and she did not want to force the patient to have the cradle over him. Nurse McCauley explained to her that they must put the cradle over the patient and appellant told nurse McCau-ley to get someone else to help her and walked out.
“4. Appellant, at this point, got extremely loud and boisterous and continued for at least an hour to make loud statements of the futility of this type of “administrative bullshit” and generally complained to anyone who would listen to her about the futility of the administrative or doctor’s orders. The appellant complained that she was not ‘going to be anybody’s nigger.’ While these comments may or may not have been directed at Phyllis McCauley they were obviously said for the benefit of Phyllis McCauley and loudly enough for Dr. Brian and Phyllis McCauley to hear even though they were separated from the nurses’ station.
“5. After appellant refused to assist R.N. Phyllis McCauley, she telephoned the nursing supervisors Edna Faircloth and Mrs. LeBlanc who were on another floor and asked them to come up and discuss the situation. Mrs. LeBlanc went into the patient’s room where the cradle was placed over the patient’s chest. Appellant entered Room 201 just as Mrs. Faircloth was finishing the placement of the cradle and began to complain that she could have done it in the manner that Mrs. Faircloth did it without upsetting the patient. Mrs. Faircloth ordered appellant to leave the room, not talk about the matter any further, and let the whole *1260 issue drop. Dr. Gregory A. Brian, who was working on the floor at that time, indicated that the loudness and comments of the appellant created a very unhealthy atmosphere that was disruptive to the normal routine of the floor. He personally stated that it extended the time necessary for him to finish his duties and that appellant appeared to be more interested in stating her case than in taking care of her duties on the floor.
“6. Two patients and the wife of a patient who had been present in Room 201 testified that they had observed the disagreement between the R.N. and the appellant, that appellant had refused to force the cradle on the patient, that appellant had told the R.N. to get someone else to help her and walked out of the room. These witnesses’ memories were amazingly vivid about the incident between the R.N. and appellant but very hazy regarding other events that happened before and after this disagreement. The Commission concludes that something loud and unusual must have happened at this male patient’s bed to have become so indelible in the patients’ and visitor’s minds when they could not remember immediately after this disagreement.”
Our analysis of the record and especially the transcript of the hearing leads us to conclude that there was ample basis for all the findings of fact made by the Commission.
The decisions of the Commission are subject to review on any question of law or fact. La. Const. (1974), Art. 10, § 12; Gallardo v. Department of Fire, 399 So.2d 626 (La.App. 4th Cir.1981); Dundy v. Louisiana State University, etc., 394 So.2d 650 (La.App. 1st Cir.1980); Sanders v. Dept. of Health & Human Resources, 394 So.2d 629 (La.App. 1st Cir.1980), writ denied, 399 So.2d 602 (La.1981). It is well established that the standard of review in cases on appeal from the Commission is the same standard used in reviewing decisions from the trial courts. The factual determinations of the Commission will not be set aside unless they are shown to be manifestly erroneous. Department of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981), writ denied, 406 So.2d 626 (La.1981); Gallardo, supra; Albert v. Louisiana State Penitentiary, 396 So.2d 340 (La.App. 1st Cir.1981); Michel v. Dept. of Pub. Saf. Al. Bev. Con. Bd., 341 So.2d 1161 (La.App. 1st Cir.1976), writ denied, 343 So.2d 1078 (La.1977).
The Commission’s factual findings generated the conclusion that the appointing authority proved that appellant became extremely disruptive and used loud and abusive language after receiving an order from her supervising R.N.; and that her refusal and disagreement to carry out the order and her louder than normal comments constituted behavior inappropriate, unprofessional and detrimental to the effective functioning of the hospital ward. The Commission felt that this conduct was sufficient to justify termination notwithstanding its finding that the appointing authority did not prove that any of appellant’s loud or abusive language was directed to the male patient or directly to the nurse who had given appellant the order.
Appellant also contends that termination was too severe, especially since the hospital’s disciplinary rules provide for reprimand or suspension for initial offenses. The Commission refused to allow any evidence relative to the administrative policies of the hospital because it felt that same was irrelevant inasmuch as appellant had been terminated in accordance with Civil Service Rule 12.1.[2] Its ruling was correct.
Great weight is given to the factual conclusions of the administrative fact finder. Sanders, supra; Arnold v. New Orleans Police Dept., 383 So.2d 810 (La.App. 4th Cir.1980) writ denied 385 So.2d 274 (La.1980); Herbert v. Dept. of Police, 362 So.2d 1190 (La.App. 4th Cir.1978).
*1261 We feel that there was ample evidence to support not only the Commission’s findings of fact, but also, its decision which affirmed the disciplinary measure of termination, and we affirm its decision at appellant’s costs.
AFFIRMED.

. The charges of discrimination were not pursued by appellant at the evidentiary hearing.

. “12.1 Disciplinary Actions.
An appointing authority may take appropriate action to remove, suspend, demote, reduce in pay, reassign or reprimand an employee for cause.”