573 So.2d 567 (1991)
Henry JONES
v.
DEPARTMENT OF PUBLIC WORKS.
No. 90-CA-613.
Court of Appeal of Louisiana, Fifth Circuit.
January 16, 1991.
Writ Denied March 28, 1991.
*568 William R. Mustian, III, Metairie, for plaintiff/appellant.
Warren E. Mouledoux, Jr., Asst. Parish Atty., Gretna, for defendant/appellee.
Before GRISBAUM, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
This is an appeal from a decision of the Jefferson Parish Personnel Board, upholding dismissal of Henry Jones, a permanent civil service employee of the Jefferson Parish Department of Water.
Jones had been employed as a laborer for about sixteen months on the morning of January 18, 1990, when he allegedly told Roy Charles, lead laborer on a truck crew, that he was going to shoot his foreman, Jessie Hutchinson. Charles reported the alleged statement to Hutchinson, who asked Jones about it and, allegedly, Jones repeated the threat. Jones left with his truck but was later called back to the yard and arrested. On January 19, 1990 he was discharged by the director of the department.
Jones denied having ever made a threat and appealed his firing to the Personnel Board. A personnel hearing was held on May 20, 1990 before a hearing examiner, with counsel for the appellant, an assistant parish attorney, and the personnel manager, representing the appointing authority. Based upon a transcript of the hearing, the Personnel Board upheld the water department's action. This appeal followed.
The appellant presents four issues: (1) whether the appointing authority carried its burden of proof; (2) whether the appointing authority's failure to call other employees gave rise to the presumption that their testimony would have been adverse to the appellee; (3) whether the Personnel Board's determination of the credibility of witnesses for the appellee had any basis; and (4) whether the Board's decision was manifestly erroneous.
In Bonner v. Dept. of Parks & Recreation, 524 So.2d 255, 257 (La.App. 5th Cir. 1988) this court set out the appropriate standard of review in civil service appeals:
The appropriate standard of appellate review of actions by a civil service board is to determine whether the conclusion reached was arbitrary or capricious. Newman v. Department of Fire, 425 So.2d 753 (La.1983). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the efficient operation of the public service, and the appointing authority must demonstrate by a preponderance of the evidence that the conduct did in fact impair the efficiency and orderly operation of the public service. Id.
On appellate review, the findings of fact of a civil service board are entitled to the same weight as the findings of fact made by a trial court and are not to be overturned in the absence of manifest error. City of Kenner v. Wool, 433 So.2d 785 (La.App. 5th Cir.1983).
The appointing authority bears the burden of proving legal cause for the action taken. As dismissal of a permanent civil service employee is the most extreme form of disciplinary action, cause that may justify a lesser form of disciplinary action may not justify a discharge. Abadie v. Department of Streets, 480 So.2d 425 (La. App. 4th Cir.1985), writ denied 481 So.2d 1351 (La.1986). Carr v. Sewerage and Water Bd., 517 So.2d 1197 (La.App. 4th Cir. 1987).
Consideration of all the issues raised by the appellant entails an evaluation of the testimony. The appellant casts doubt upon *569 the credibility of the two accusers, Roy Charles and Jessie Hutchinson, who testified for the appointing authority.
Charles testified that Jones told him he was going to shoot Hutchinson if he called him to work with him on "stand-by," because he had reported Jones for being drunk. The record reveals that Jones was suspended in June, 1989 for five days for drinking on the job and was reported for being drunk in December, 1989. In the December incident, no action was taken because of uncertainty as to his being drunk or having an adverse reaction to a prescribed medication.
Charles stated that the incident took place at about 8:00 a.m. on Tuesday or Wednesday in the back of the yard, where they were washing their respective trucks, and in the presence of David Licciardi and Louis Plaisance, co-laborers on Jones's truck. Charles said that Licciardi, Plaisance, and other employees heard the conversation and laughed.
Jessie Hutchinson testified that at 7:30 or 7:45 on Monday he was in the yard, where the truck was being cleaned and readied to leave for the day. He reported Charles's statement as follows:
... Mr. Jones said he was going to shoot me and he was going to get on stand-by with me. That was one of the things that he told me, he was going to get on stand-by with me and at that time, he was going to ask me to go use the telephone and then he was going to call his wife to get his gun, which it was a .45 caliber he said and he was going to shoot me. His wife was going to bring the gun.
Hutchinson then called Jones over to his truck, where he was sitting, and asked him why he said he was going to shoot him. Hutchinson testified that Jones said:
... I took bread off his table by tellingby writing him up for being drunk on the job, drinking on the job that day not that day but two, three days prior to that.
Hutchinson said no one was nearby when Jones repeated his threat.
Henry Jones testified that on January 18, 1990, he had been employed by the department for a year and four months. The day was Thursday (the correct day of the week for that date) and he had arrived at 6:56 a.m. The truck had been washed by another employee and the truck left at 7:30. Jones said he did not see or talk to Charles or Hutchinson that morning. After they had performed three assignments a water department employee arrived and took Jones back to the yard, where Hutchinson later had him arrested. When asked at the hearing what kind of weapon he owned he replied that he had a .3030 Winchester rifle and did not own a pistol.
David Licciardi testified that he and Jones were members of the same crew but he drove the backhoe and left the yard around 7:30 or 7:35, before the truck left. He did not hear any conversations between Charles and Jones or Hutchinson and Jones and heard no threatening remarks made by Jones. Although he saw Charles in the yard, he did not see him and Jones together.
Louis Plaisance testified that he heard no threats by Jones and had only heard "yard talk" regarding the incident.
We note several inconsistencies between Charles's and Hutchinson's testimony. Charles stated that the day of the week was Tuesday or Wednesday, while Hutchinson remembered it as Monday. In fact, it was Thursday, as stated by Jones. Charles said he heard Jones's remarks at 8:00 a.m. and shortly afterward told Hutchinson, while Hutchinson said Charles spoke to him at 7:30 or 7:45. Charles testified that Hutchinson went into the office immediately and called the police. Hutchinson stated that after Jones left with his truck he became more worried, consulted with his supervisor and the department director, and called the police.
As to the weapon Jones threatened to use, the stories of Hutchinson, Charles, and Jones all differ. Charles testified first that Jones said he would get his wife to buy a gun but, when asked by the attorney to repeat, stated that he said he would get his wife to bring a gun. Hutchinson said the *570 wife was to get his gun, a .45 caliber, but acknowledged that at an unemployment compensation hearing he said it was a .45 or a .357 magnum. He added, "It was a gun, big gun, large gun, .45, .357, what difference?" Jones denied owning a pistol.
The appellant argues that Hutchinson's behavior was not consistent with that of a man whose life had been threatened. He called Jones over to his truck after receiving Charles's report that Jones was going to shoot him. Instead of detaining Jones at the yard he sent him out to work with his crew as usual.
With the above summary of the testimony in mind we now consider the issues presented by the appellant.

Failure to call Brian Hebert.
Roy Charles had named Brian Hebert as an employee who was present in the yard and heard Jones talking to him. The appellant argues that the appointing authority's failure to call Hebert as a witness should raise a presumption that his testimony would have been adverse. The appellee points out and we agree that Hebert was equally available as a witness to Jones but was not subpoenaed. Accordingly, the Board acted correctly in not applying the presumption.

Credibility of witnesses.
The Board chose to believe the appointing authority's witnesses instead of those called by the appellant. Both Licciardi and Plaisance denied hearing any threats. Plaisance's testimony was rather confused. Licciardi said the alleged incident could have taken place after he left, driving the backhoe in advance of the truck crew. The Board as trier of fact had the authority to place whatever weight on the testimony it saw fit.

Burden of proof; whether decision was manifestly erroneous.
The Board had the burden of proving by a preponderance of the evidence that the employee's conduct impaired the efficiency and orderly operation of the public service. The report of the Personnel Board stated that its members concluded the threat was in fact made and was based upon Hutchinson's having caused Jones to be suspended "on at least one previous occasion" for drinking on the job. The report cites the disciplinary action of June 9, 1989. A letter from the director of the water department, notifying Jones of his termination stated:
I cannot nor will not tolerate the threats upon the lives of fellow employees. There is no way to determine between idle and serious threats and no employee within this Department nor the Parish should have to work under the stress of someone threatening his life..
We agree that for an employee to threaten the life of another employee directly affects the orderly operation of the department.
The Board considered the testimony and exhibits and made its decision. We do not find that it acted arbitrarily or capriciously. The appellate court cannot overturn a decision of a civil service board in the absence of manifest error. We find none.
For the reasons stated above, the decision appealed from is affirmed.
AFFIRMED.