845 So.2d 491 (2003)
Oko USUN
v.
LSU HEALTH SCIENCES CENTER MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS.
No. 2002 CA 0295, 2002 CA 0296.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
*493 Larry E. Broome, New Orleans, for Plaintiff-Appellant Oko Usun.
Philip H. Kennedy, New Orleans, for Defendant-Appellant LSU Health Science Center, Health Care Services Division, Medical Center of Louisiana at New Orleans.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
Oko Usun, appellant, appeals the decision of the Civil Service Referee sustaining his dismissal by the appointing authority in these consolidated cases.

FACTS AND PROCEDURAL HISTORY
Mr. Usun was formerly employed as a Medical Laboratory Technician III in the Pathology Services/Toxicology Department of the Medical Center of Louisiana at New Orleans (MCLNO). He worked the 11:00 p.m. to 7:00 a.m. shift and was a shift supervisor. On the morning of August 12, 1999, Mr. Usun and his supervisor, Victoria Giblin, engaged in two separate disputes over some testing that had not been conducted and a departmental directive requiring employees with over 160 hours of compensatory time (k-time) to reduce the number of hours accumulated. Because of the disagreement with Ms. Giblin about his compensatory time, Mr. Usun wrote a fivepage letter to her, which he posted on the door of her office. He later filed a grievance in regard to the request that he reduce the amount of compensatory time accrued.
On August 17, 1999, as a result of some strong language in the letter and grievance written by Mr. Usun, which was perceived as threatening, Mr. Usun was placed on immediate suspension, with pay, pending an investigation of the matter. MCLNO later made a request to extend the suspension-pending-investigation for an additional 30 days, which was granted by the Civil Service Referee. Sometime thereafter, a notice of termination, effectively terminating Mr. Usun's employment as of December 21, 1999, was sent to Mr. Usun. In the meantime, following the granting of the extension to MCLNO, Mr. Usun filed appeal No. 13774 with the Civil Service Commission (Commission) contesting the suspension, investigation and the charges made against him by MCLNO.
On January 6, 2000, MCLNO submitted a request to the director of the Department of Civil Service to rescind the December 21, 1999 termination of Mr. Usun based on notification that Mr. Usun received the termination letter on December 29, 1999, after the effective date of termination. The Civil Service Referee approved the request, and the December 21, *494 1999 termination was accordingly rescinded.
Following the rescission of the December 21, 1999 termination, Mr. Usun was not allowed to return to work, but was placed on forced leave pending re-termination. On January 27, 2000, a new letter of termination was drafted to notify Mr. Usun that his employment with MCLNO was being terminated effective April 6, 2000. Eight copies of the January 27, 2000 letter were mailed to Mr. Usun by counsel for MCLNO between March 23-29, 2000. Mr. Usun's employment was effectively terminated on April 6, 2000, at 11:59 p.m. On April 24, 2000, Mr. Usun filed appeal No. S-14010 contesting his termination. On October 26, 2000, the Civil Service Referee consolidated both appeals, Nos. 13774 and S-14010, for hearing.
On December 6, 2000, the Civil Service Referee held a hearing on the consolidated matters and by a decision dated July 11, 2001, the Civil Service Referee denied the appeals. Mr. Usun filed an application requesting that the Commission review the decision of the Civil Service Referee on July 24, 2001, with that application being denied on September 13, 2001. An appeal to this court followed.

ASSIGNMENTS OF ERROR
In bringing this appeal, Mr. Usun alleges several errors committed by the Civil Service Referee in rendering her decision:
1. The decision was contrary to the law and evidence;
2. A written communication to a supervisor should not be considered, threatening, because of the use of one word, namely "lethal;"
3. The Referee erred, when she gave only one interpretation to the word lethal;
4. The appellant was wrongfully discharged from his employment, for writing a letter of complaint;
5. The Referee erred in not reinstating appellant to his position, since some overt act should have also been present to prove this alleged letter was [threatening];
6. The Referee erred by not reinstating appellant, because Civil Service Rules were violated when he was terminated;
7. Further, we allege all other errors, made by the Referee which will be specifically pointed out, when we receive the transcript of this hearing;

STANDARD OF REVIEW
Generally, decisions of Civil Service Commission Referees are subject to the same standard of review as decisions of the Commission itself. Decisions of the Civil Service Commission are subject to the same standard of review as a decision of a district court. Johnson v. Department of Health and Hospitals, 00-0071, p.3 (La.App. 1st Cir.2/16/01), 808 So.2d 436, 437-438. When reviewing the Commission's findings of fact, the appellate court is required to apply the manifestly erroneous or clearly wrong standard of review. However, in evaluating the Commission's determination as to whether the disciplinary action taken by the appointing authority is based on legal cause and commensurate with the infraction, the reviewing court should not modify or reverse the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. Jackson v. Department of Health and Hospitals, Office for Citizens with Developmental Disabilities, 98-2772, p. 2 n. 1 (La.App. 1st Cir.2/18/00), 752 So.2d 357, 359 n. 1.

*495 DISCUSSION
Although Mr. Usun alleges several assignments of error, his complaints can basically be summed up in two contentions: (1) that the evidence was insufficient to warrant the disciplinary action taken and (2) the Civil Service Referee erred in finding that MCLNO could still terminate Mr. Usun after the rescission of the earlier termination.[1] We will first consider whether the evidence was sufficient to warrant Mr. Usun's termination.
In the decision rendered by the Civil Service Referee, she found that both the letter written to Ms. Giblin and the grievance filed by Mr. Usun contained "language that is inappropriate and threatening."[2] She further believed the testimony of MCLNO police officers, Detective Everrett Darensbourg and Lieutenant Robert Chamberlain, and credited their testimony over that of Mr. Usun. Specifically, she believed their testimony that Mr. Usun told them the following: "Why would he do anything to that old woman, if anything, he would harm her through her children, that would make her suffer more than anything." She did not credit Mr. Usun's testimony denying that he had made the threatening statement to the officers, finding that Mr. Usun's testimony, on that issue, was at best self-serving.
Finally, referencing another decision of the Commission, the Civil Service Referee held that "[a] state agency is within its rights when it takes a `zero tolerance' stance on workplace violence. Acts of violence in the workplace constitute legal cause for dismissal." She further found that although Mr. Usun "makes statements and uses words that he later regrets," she did not find his defense of "`[t]hat's not what I meant,"' to be credible. Thus, she found that the agency bore its burden of proof and denied Mr. Usun's appeal.
A permanent classified civil service employee cannot be disciplined without cause. La. Const. art. 10, § 8. Cause exists when the employee's conduct is detrimental to the efficient and orderly operation of the public service that employed him. In order to modify or reverse the Civil Service Referee's determination regarding cause in this matter, we must first find that the Civil Service Referee's decision was arbitrary, capricious or an abuse of discretion. Williams v. Orleans Levee District, Board of Commissioners, 00-0297, p. 4 (La.App. 1st Cir.3/28/01), 784 So.2d 657, 659, writ denied, 01-1730 (La.9/14/01), 796 So.2d 686. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. A conclusion is "capricious" when there is no *496 substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Burst v. Board of Commissioners, Port of New Orleans, 93-2069, p. 5 (La.App. 1st Cir.10/7/94), 646 So.2d 955, 958, writ not considered, 95-0265 (La.3/24/95), 651 So.2d 284.
At the hearing, MCLNO filed into evidence a copy of policy number 0040 entitled "MCL Violence Prevention and Management Policy and Procedures." The effective date listed on the policy is November 8, 1995. In the section subtitled "Human Resources' Responsibility" under part III(C), the third paragraph of that section states, "[a]ny employee who initiates a violent incident involving verbal, physical assaults and/or intimidation, shall be terminated."
As stated previously, in his letter and grievance, Mr. Usun used language that threatened certain violent behavior and/or assaults. In accordance with MCLNO policy number 0040, Mr. Usun's supervisor and departmental manager contacted Human Resources for guidance regarding suitable disciplinary action. Deborah Bartholomew, Human Resource Manager at MCLNO, advised Joyce Magonos, Ms. Giblin's supervisor and the departmental manager, to notify the MCLNO police of the threats in the two documents and to place Mr. Usun on suspension pending an investigation. These actions were taken. Once MCLNO police were notified, officers Darensbourg and Chamberlain interviewed Mr. Usun, whereupon he allegedly made threats to harm Ms. Giblin's children, which testimony was credited by the Civil Service Referee.
Based on this evidence in the record, we cannot say that the Civil Service Referee's determination was arbitrary, capricious or an abuse of discretion. Furthermore, we agree with the Civil Service Referee's holding that acts, or as in this case, threats of violence can constitute legal cause for dismissal. See Jones v. Department of Public Works, 573 So.2d 567 (La.App. 5th Cir.), writ denied, 577 So.2d 12 (La.1991); Flowers v. Department of Revenue and Taxation, 507 So.2d 240 (La. App. 1st Cir.), writ denied, 513 So.2d 286 (La.1987); Merchant v. Department of Finance, 391 So.2d 587 (La.App. 4th Cir. 1980); Joseph v. Department of Health, 389 So.2d 739 (La.App. 4th Cir.1980); Paulin v. Department of Sanitation, 388 So.2d 136 (La.App. 4th Cir.1980). Hence, we find no merit in Mr. Usun's first contention.
As to Mr. Usun's second contention, he asserts that based on the rescission of the December 21, 1999 termination, MCLNO violated his due process rights by re-terminating him based on the same facts for which the first termination was attempted. This contention by Mr. Usun is without merit. If a termination is reversed or rescinded due to procedural defects, the employer can re-use the same conduct to support a subsequent termination. Baker v. Southern University, 590 So.2d 1313, 1316 (La.App. 1st 1991). Furthermore, the rescission of the first termination "was similar to a judgment as of nonsuit, to which an application of res judicata would be inappropriate, no determination having been made on the merits." Butler v. Department of Health and Human Resources, Office of Family Security, 432 So.2d 1000, 1002 (La.App. 1st Cir. 1983).
MCLNO asked the director of the Civil Service to rescind the first termination because the certified mail, return receipt form received by them indicated that Mr. Usun did not receive the letter of termination until December 29, 1999, after the effective date of termination. The Civil Service Referee granted the request and *497 the December 21, 1999 termination was rescinded. Clearly the failure to present the letter to Mr. Usun before the effective date of termination was merely a procedural defect, and as such, would not preclude Mr. Usun's re-termination based on the same conduct that supported the first termination.
In regard to his re-termination, Mr. Usun briefly refers to the fact that he was not allowed to resume his work duties following the re-termination and alleges that he never received official notice of either termination. As noted in the decision of the Civil Service Referee, Civil Services Rule 11.9 provides that at an appointing authority may require an employee to take part of their annual leave and Rule 11.29(d) provides that an appointing authority may require an employee to take all or part of their compensatory leave. Ms. Bartholomew explained at the hearing that after the rescission, depending on the situation, MCLNO had the choice of either allowing Mr. Usun to resume his duties or to place him on forced leave. She testified that MCLNO decided to place Mr. Usun back on forced leave pending his re-termination. The Civil Service Referee concluded that MCLNO did not violate Civil Service Rules in taking this course of action. We find no error in this determination by the Civil Service Referee. See Baker, 590 So.2d at 1316.
Finally, as to Mr. Usun's assertion that he did not receive official notice of either termination, we find that proper notice was given to Mr. Usun regarding the second termination. At the hearing before the Civil Service Referee, counsel for MCLNO took the stand to testify of the extensive measures he took to ensure that Mr. Usun received timely notice of the second termination. The following is part of that testimony:
Based upon conversations that I have had with both the Human Resources Department and with the Pathology Department, I was impressed that there was a real problem in attempting to get verification of mail to Mr. Usun.... We had already had a problem with the first termination action in December and because it was apparently not received timely or at least we could not prove that it was received timely, we had to withdraw that action. Therefore, in connection with Ms. Linda Jones, I had her prepare eight identical letters of termination just to avoid the prospects of [Mr. Usun] getting a letter that was only a copy of a letter... and because I had some suspicions about whether or not Mr. Usun was purposely avoiding services on these, I embarked upon a plan to send half of the letters to one address, which was a P.O. Box 53022, and the other half of the letters to an address on Bundy Road.... Now, half of the letters were mailed in New Orleans, four were mailed in New Orleans. Four were mailed in Baton Rouge. Of the four that were mailed in New Orleans, two were mailed to the Bundy Road address and two were mailed to the P.O. Box. Out of the two mailed to the P.O. Box, one was mailed with a simple certificate of mailing. The other was mailed by certified mail with a return receipt requested.
MCLNO's counsel further testified that he acted similarly in sending the two letters to the Bundy address (one simple certificate, and one certified mail with a return receipt) and the four letters from Baton Rouge (two to the P.O. Box, and two to the Bundy Road address). He also stated that the four letters sent from Baton Rouge were postmarked March 23, 2000, one of the New Orleans letters was postmarked March 24, 2000, and the remaining three New Orleans letters were postmarked *498 March 29, 2000. The effective date of termination in the second termination letter was April 6, 2000.
Proof of deposit in the mail creates a prima facie presumption of delivery which may be rebutted by positive evidence of lack of delivery or receipt. Conoco, Inc. v. Tarver, 600 So.2d 889, 890 (La. App. 1st Cir.), writ denied, 604 So.2d 1305 (La.1992). Furthermore, Civil Service Rule 12.8(d)(2) states that written notice can be considered as given when "on the 7th calendar day after it is mailed to the employee, with correct postage, at the most recent address he furnished in writing to his personnel office." On the grievance Mr. Usun filed with MCLNO's Human Resources, he listed P.O. Box 53022, New Orleans, LA 70153 as his mailing address. MCLNO presented proof that that it deposited the requisite notices in the mail, therefore it is entitled to the presumption of delivery and a finding that written notice was given.[3] We, thus find no error in the Civil Service Referee's determination that Mr. Usun's termination was proper.

CONCLUSION
Therefore, having considered the law and evidence, we find that the Civil Service Referee did not abuse her discretion in upholding the disciplinary action imposed and thus affirm her decision. All costs of this appeal are assessed to the appellant, Oko Usun.
AFFIRMED.
NOTES
[1] It is noted that although Mr. Usun raises several assignments of error, many of which are duplicative, in his brief he does not discuss each assignment individually. Instead, only a general "Summary of Argument and Authorities" was presented, wherein Mr. Usun asserts that his re-termination following the rescission violated his rights to due process and should have been considered "administrative res judicata." The remainder of his argument centers on pointing out portions of the testimony of one witness, Donald Wolford.
[2] In her findings of fact, the Civil Service Referee quotes specific language from the Giblin letter, including the statement: "You have caused me so much pain all I want to do whenever I see you is to strangle you and you are going to pay for this.... I am fighting back and you are going to get pure unadulterated `Hell' from me." As for the grievance, the Civil Service Referee noted that Mr. Usun filed it to protest the alleged attempt to deprive him of "k-time" and quotes the following from that document as Mr. Usun's response to that attempt: "I will have no choice but to view this as an active potent aggression and will fight back using any means available including the use of lethal force."
[3] MCLNO did introduce a copy of one of the letters sent from Baton Rouge that had been returned unclaimed. The unclaimed letter was certified, return receipt and was sent to the Bundy Road address. None of the other letters were returned.