917 So.2d 522 (2005)
Mary N. BROWN
v.
DEPARTMENT OF HEALTH & HOSPITALS EASTERN LOUISIANA MENTAL HEALTH SYSTEM.
No. 2004 CA 2348.
Court of Appeal of Louisiana, First Circuit.
November 4, 2005.
Rehearing Denied December 22, 2005.
*525 J. Arthur Smith, III, Baton Rouge, for Plaintiff-Appellant.
Neal R. Elliott, Jr., Joanne Henig, Baton Rouge, for Defendant  Appellee Dept. of Health & Hospitals, Eastern La. Mental Health System.
Robert R. Boland, Jr., Baton Rouge, for Defendant  Appellee Allen H. Reynolds, Director, Dept. of State Civil Service.
Before: WHIPPLE, McCLENDON, and WELCH, JJ.
WELCH, J.
The appellant, Mary N. Brown, appeals an adverse ruling by the State Civil Service Commission upholding her termination by the appointing authority from her previous state employment as a Licensed Practical Nurse 2 at Eastern Louisiana Mental Hospital System (ELMHS). After a thorough review of the record and the applicable law and jurisprudence, we affirm the decision of the Commission, finding appellant's termination was based on legal cause and commensurate with the infractions.

FACTUAL BACKGROUND
Prior to her termination, Ms. Brown was serving with permanent status, having been employed for fifteen years by the Department of Health and Hospitals, Office of Mental Health, at ELMHS as an LPN 2.
Ms. Brown's termination was based on two separate incidents in which the appointing authority deemed Ms. Brown's conduct to be unprofessional, inappropriate, abusive and neglectful. The first incident occurred on Wednesday November 14, 2001, when Ms. Brown allegedly was neglectful and verbally abusive to a patient who requested asthma medications. Ms. Brown allegedly called the patient a "fat ass," ignored her requests and refused to administer the asthma medication, despite that the medication had been prescribed and approved for dispensing to the patient on an "as needed" (PRN) basis. The second incident occurred on Monday, November 19, 2001, when Ms. Brown allegedly used a curse word ("hell") while making reference to other employees, in the presence of patients, that a particular patient had been allowed to put the same (dirty) clothes back on after a shower.[1] A few minutes later, Ms. Brown was allegedly seen putting on a pair of gloves and personally escorting the client back toward *526 her room. Shortly thereafter, the client was observed walking naked in the hallway, claiming that Ms. Brown had taken away her clothes and threatened to throw them away.

PROCEDURAL BACKGROUND
Pursuant to Civil Service Rule 12.7, Mary Brown was given written notice by letter dated September 12, 2002, from her appointing authority[2] informing her that termination from her employment was being proposed as disciplinary action for the two aforementioned incidents, which were separately detailed in the letter. In a subsequent letter dated October 7, 2002, Ms. Brown was notified that the appointing authority adopted the proposed disciplinary action and she was terminated from her employment effective October 9, 2002.
On October 28, 2002, Ms. Brown filed a Petition for Appeal from her termination, denying all allegations and averring that the disciplinary action was unwarranted and unjustified because there was no legal cause (i.e., impairment to the efficiency of the public service) sufficient to justify disciplinary action. She further asserted that the action imposed (termination) was disparate and discriminatory, failed to comport with customary Department procedures and was too severe.
On November 1, 2002, Ms. Brown filed a First Supplemental and Amending Petition in which she factually alleged three separate and unrelated incidents involving other department employees, in support of her previous claim that the disciplinary action against her was disparate and discriminatory.
On January 30, 2003, notice of appeal was issued scheduling a public hearing of Brown's appeal for March 20, 2003. On March 3, 2003, Ms. Brown attempted to file a second supplemental and amending petition, seeking to allege another incident that occurred on November 21, 2002, which Ms. Brown claimed would further support her claim of purported disparate and discriminatory treatment. On March 6, 2003, the motion to file the second supplemental petition was denied on the face of pleading with a handwritten notation by the referee that the filing was untimely pursuant to Civil Service Rule 13.12(d). The hearing began on March 20, 2003 and was continued for completion, which occurred on September 24, 2003.
On April 5, 2004, a decision was rendered, confirming the denial of Ms. Brown's attempt to file a second supplemental and amending the petition and finding the appointing authority met its burden of proving that Ms. Brown's conduct constituted legal cause for disciplinary action and that the disciplinary action of termination from her job was commensurate with the infractions which the Commission found as a matter of fact constituted rude, inappropriate and unprofessional conduct, and neglect and embarrassment of a client.
On April 20, 2004, Ms. Brown filed an application for review of the referee's decision. On July 29, 2004, that application was denied. This appeal followed.

ASSIGNMENTS OF ERROR
Ms. Brown asserts: (1) the referee erred in denying her attempts to file a second supplemental and amending petition; (2) certain factual findings of the referee were manifestly erroneous; (3) the referee erred in upholding the disciplinary action in the absence of evidence that appellant's *527 conduct was prejudicial to the public service in which she was engaged or detrimental to its efficient operation; and alternatively, (4) the disciplinary action was too severe.

STANDARD OF REVIEW
This court recently summarized the standard of review applicable to decisions of the Civil Service Commission as follows:
Generally, decisions of Commission referees are subject to the same standard of review as decisions of the Commission itself. Decisions of the Commission are subject to the same standard of review as a decision of a district court. Usun v. LSU Health Sciences Center Medical Center of Louisiana at New Orleans, 02-0295, p. 4 (La.App. 1st Cir.2/14/03), 845 So.2d 491, 494. When reviewing the Commission's findings of fact, the appellate court is required to apply the manifestly erroneous or clearly wrong standard of review. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647. However, in evaluating the Commission's determination as to whether the disciplinary action taken by the appointing authority is based on legal cause and commensurate with the infraction, the reviewing court should not modify or reverse the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Usun, 02-0295 at p. 4, 845 So.2d at 494. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Burst v. Board of Commissioners, Port of New Orleans, 93-2069, p. 5 (La.App. 1st Cir.10/7/94), 646 So.2d 955, 958, writ not considered, 95-0265 (La.3/24/95), 651 So.2d 284.
Lasserre v. Louisiana Public Service Com'n, XXXX-XXXX (La.App. 1st Cir.4/8/05), 903 So.2d 474, 477.

APPLICABLE SUBSTANTIVE LAW
Employees with permanent status in the classified civil service may be disciplined only for cause expressed in writing. La. Const. art. 10, § 8. "Cause" exists when the employee's conduct is detrimental to the efficient and orderly operation of the public service that employed him or her. Stated differently, disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the "efficient operation" of the public service. Bannister, 95-0404 at p. 8, 666 So.2d at 647. The appointing authority has the burden of proving that the conduct did in fact impair the efficiency and orderly operation of the public service. Thornton v. DHHR, 394 So.2d 1269, 1271 (La.App. 1st Cir.1981).
A preponderance of the evidence means evidence which is of greater weight than that which is offered in opposition thereto. And, proof is sufficient to constitute a preponderance when, taken as a whole, it shows the fact of causation sought to be proved as more probable than not. Wopara v. State Employees' Group Benefits Program, 2002-2641, p. 4 (La.App. 1st Cir.7/2/03), 859 So.2d 67, 69; see generally, La. Const. Art. X, § 8(A); Civil Service Rule 13.19(c).

SECOND SUPPLEMENTAL AND AMENDING PETITION
Appellant's attempt to file a second supplemental and amending petition was denied by the referee pursuant to *528 Civil Service Rule 13.12(d), which provides that no appeal shall be supplemented or amended following the expiration of the thirty (30) day time period for filing a civil service appeal. Appellant does not dispute that her attempted second supplemental and amending petition was filed after the thirty-day time period allowed by Rule 13.12(d); however, she claims that the referee's disallowance of the amendment notwithstanding the dictates of Rule 13.12(d) runs afoul of two cases, Rocque v. Department of Health and Human Resources, 505 So.2d 726 (La.1987) and Carter v. Department of Revenue and Taxation, 563 So.2d 920 (La.App. 1st Cir.1990). For the following reasons, we find those cases distinguishable and inapplicable.
Both cases cited above by the appellant dealt with the summary dismissal of appeals pursuant to Civil Service Rule 13.11(d), governing the pleading of discrimination in Civil Service Cases and requiring a "clear and concise statement" of the basis for appeal. The courts found that the requirement of Rule 13.11(d) when applied in conjunction with Rule 13.14, requiring summary dismissal when a notice of appeal does not comply with Rule 13.11, together with Rule 13.12 disallowing supplementation or amendment of an appeal beyond the thirty-day period for filing an appeal, the effect  summary dismissal of the appeal  was "unreasonable and impose[d] an unduly onerous responsibility on appellants." Both Rocque and Carter held that a Civil Service Appeal can not be dismissed for non-compliance with Rule 13.11(d) when amendment is not permitted by application of Rule 13.12(d).
In this case, the referee's decision to disallow appellant's second amending petition did not terminate or dismiss her appeal, nor did it exclude any of her claims. She was not seeking to amend a defective appeal that would otherwise be subject to summary dismissal. Indeed, the appellant herein had already raised the claim of disparate treatment and had been allowed to file a first supplemental and amending petition to allege facts to support that claim. The second amending petition merely sought to further bolster that claim with factual allegations concerning an event that occurred well within the time limits imposed by Rule 13.12(d). Thus, appellant has failed to show any error by the referee in its direct application of Rule 13.14(d) and disallowing the untimely supplemental and amending petition, nor has she shown any prejudice unduly or onerously imposed on her by the application of the Rule. See Marcantel v. Department of Transportation and Development, 590 So.2d 1253, 1257 n. 2 (La.App. 1st Cir.1991); Johnson v. Southern University, 551 So.2d 1348, 1361 (La.App. 1st Cir.), writ denied, 553 So.2d 475 (La.1989). Accordingly, the denial of appellant's motion to file a second supplemental and amending petition is affirmed.

FACTUAL FINDINGS
With regard to the November 14, 2001 incident involving the patient who requested asthma medication, the appellant argues that the appointing authority failed to prove by a preponderance of the evidence that Ms. Brown acted unprofessionally or that she was neglectful or abusive to a patient. Specifically, she denied that the incident even occurred and argues the evidence failed to establish by a preponderance she was asked and refused to give patient # 87,755[3] her asthma pump on November 14, 2001. She also asserts the evidence failed to prove by a preponderance *529 that she called patient # 87,755 a "fat ass" during the alleged incident.
The undisputed factual findings made by the referee consist of the following: On November 14, 2001, Ms. Brown was employed as an LPN 2 on Ward 3 of the Evangeline Building at ELMHH on the 3:00 p.m. to 11:00 p.m. shift. The Psychiatric Aides also employed on that ward for that shift were Christina Leonard, Johnette Mathews, Betty Reed, and Jamie Spears. Ms. Brown's duties, which she specifically acknowledged, included supervising the psychiatric aides and dispensing medications to patients as warranted and needed. Patient # 87,755 resided on Ward 3 and suffered from asthma. She had been prescribed albuterol (an asthma medication administered by pump) by her physician to be given to her upon her request as needed for shortness of breath and wheezing. Ms. Brown's responsibilities in this regard consisted of medically assessing the patient's need for the requested medication and dispensing it, as prescribed, if warranted. In this patient's case, the medication was prescribed on an "as needed" basis and as long as her albuterol doses did not exceed three times within a 24-hour period, dispensation was proper.
However, the facts surrounding the alleged incident, including whether such incident even occurred, are highly disputed and the evidence presented is both inconsistent and conflicting. At the center of the dispute is Ms. Brown's denial that the incident even took place. According to Ms. Brown, the only contact between herself and the patient on the evening at issue consisted of the patient requesting a snack to eat and Ms. Brown going down the hall and bringing the patient an orange. Ms. Brown did acknowledge that this particular patient routinely, i.e., once or twice a week, would come to the nurses' station in the evenings and ask for her asthma medication. Ms. Brown also testified that on the night in question, if the patient would have asked for her asthma medication, she, as the LPN in charge for that shift, should have and would have dispensed it to her.
The four psychiatric aides working with Ms. Brown on the 3:00 to 11:00 p.m. shift also testified concerning the November 14, 2001 incident. Although their testimony conflicted on various minor details, all four of them testified that on the night in question, patient # 87,755 came to the nurses' station exhibiting signs of having trouble breathing and asked for her asthma medication. Three of the aides, Christina Leonard, Johnetta Mathews and Betty Reed, each testified that the request for asthma medication was either outright refused or ignored by Ms. Brown. The fourth aide, Jaime Spears testified that the patient came to the nurses' station asking for asthma medication as well as for a snack. She testified that in response to the request, she observed Ms. Brown go down the hall and she assumed that Ms. Brown was going to get the patient a snack and the requested medication. However, she acknowledged that she did not observe Ms. Brown administer the medication. Ms. Leonard testified that in response to the patient's request, she heard Ms. Brown tell the patient no and that if she didn't smoke so much, she would not need the medication. Ms. Leonard testified that the patient then told Ms. Brown that she was going to report her, to which Ms. Brown responded; "[w]ell, so." Ms. Mathews testified that Ms. Brown did not give the patient the pump as requested and instead told her "she wasn't giving her big ass nothing." According to Ms. Mathews, Ms. Brown's demeanor toward the patient was "rude." Finally, according to Ms. Reed, although it was evident the patient was having trouble breathing, Ms. Brown "just stood there," ignored the patient *530 and did not dispense the medication requested.
In contrast, the record also contains the testimony of two other psychiatric aides who were working the night of the incident and observed some interaction between patient # 87,755 and Ms. Brown. Ida Mae Ferguson and Maggie Hills were both psychiatric aides working on a separate ward than that of Ms. Brown and the patient at issue; however, their duties included doing the patient's laundry, which required them to be on Ms. Brown's ward from around 10 to 10:30 p.m. Each of these aides testified that while they were on the ward, they observed patient # 87,755 go to the nurses' station and ask for a snack. They both testified that Ms. Brown responded by getting the patient a snack. Although both aides denied observing any request by the patient for asthma medication, they both admitted that they were only on that ward for approximately ten minutes and could not testify as to what did or did not occur between this patient and Ms. Brown at any other time that evening.
Because of the conflicting accounts, credibility determinations were paramount to the referee's factual findings. It is not our job to reweigh the evidence or make our own credibility determinations. Our function is to determine whether a reasonable factual basis exists in the record to support the referee's determination that it was more likely than not that the incident occurred as detailed by the appointing authority. The foregoing summary of the evidence presented reveals a more than sufficient factual basis in the record to support the factual findings of the referee, which were adopted by the commission. Specifically, we find reasonable the referee's decision to credit more weight to the testimony of the four aides working on the ward for the entire shift than that of the two aides who were on the ward for at most ten minutes. And although the accounts relayed by the four aides differed slightly on minor details, all four provide testimony from which it is reasonable to conclude that more probable than not, patient #87,755 requested asthma medication and despite exhibiting physical symptoms warranting dispensing the medication, Ms. Brown either simply ignored or rudely refused that request. Accordingly, the referee committed no manifest error and this assignment of error also lacks merit.[4]

PREJUDICE AND DETRIMENT TO THE EFFICIENT OPERATION OF PUBLIC SERVICE
The appellant argues that the referee failed to find and the record fails to contain any evidence that the appellant's conduct was prejudicial to the public service in which she was engaged or detrimental to its efficient operation, and therefore, *531 there was an absence of legal cause sufficient to impose disciplinary action. Our review of the record reveals otherwise. First, although the referee failed to make an express finding of prejudice to and detriment to the efficient operation of the public service in which Ms. Brown was engaged, such a finding is clearly implicit in the decision and abundantly reflected in the record.
The referee's decision states that Ms. Brown "failed to care for Client # 87,755 and did not address the patients (sic) needs." The decision also concludes that "Ms. Brown was unprofessional when she call (sic) Client # 87,755 a fat ass." The decision also states that Ms, Brown's conduct in both incidents was "rude and inappropriate and an embarrassment" to the patients. Ms. Brown's notice letter stated that her job responsibilities included that she treat all clients with dignity and respect at all times and that she be a role model to the staff she supervises. The letter further stated that her responsibilities included maintaining a therapeutic milieu as well as to ensure the safety of clients at all time. It further detailed that Ms. Brown's official job duties specifically included administering prescribed and approved medication as needed. Ms. Brown's conduct was found to be unprofessional, verbally abusive and unempathetic. Common sense dictates that such conduct, exhibited in the care of mental patients, is clearly prejudicial to the public service of caring for in-hospital mental patients. Moreover, the record reflects that such conduct was violative of Ms. Brown's specific and official job responsibilities; therefore, clearly it was detrimental to the efficient operation of such public service.
The Commission has a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and a reviewing court should not reverse a commission conclusion as to the existence or absence of cause for dismissal unless the decision is arbitrary, capricious or an abuse of discretion. We find the record fully supports a finding of legal cause, notwithstanding the referee's failure to expressly find Ms. Brown's conduct was prejudicial and detrimental to the efficient operation of the public service in which she was engaged. In any event, there is no abuse of discretion and this assignment also lacks merit.

SEVERITY OF THE DISCIPLINARY ACTION
Finally, the appellant argues that the disciplinary action meted against her  termination  was too severe. Whether disciplinary action imposed is commensurate with the dereliction is, again, a determination within the discretion of the Commission and one that cannot be overturned absent an abuse of discretion. In this case, the appointing authority provided testimony that it was his personal opinion that Ms. Brown's conduct in the November 14, 2001 incident where the asthma medication was refused was sufficient, in and of itself, to warrant termination. However, in addition to this incident, the decision to terminate was also based on consideration of the second incident, occurring on November 19, 2001, where Ms. Brown allegedly cursed at employees when referring to a patient, in the presence of other patients, and took that patient's clothes and allowed her to walk naked down the hallway. As noted earlier, we found it unnecessary to fully detail that incident as the record clearly established the occurrence of the first incident which alone warranted disciplinary action. We did note summarily that our review of the record contained sufficient evidence to *532 support the referee's factual findings concerning that second incident as well. Thus, the action imposed was in response to two established incidents wherein Ms. Brown failed to perform her official duties by improperly caring for and treating patients entrusted to her care. In addition to those two incidents, which occurred just days apart, the Commission also considered two prior suspensions meted against Ms. Brown in deciding that the appropriate disciplinary action would be dismissal. One incident occurred in January 1993, when Ms. Brown was suspended for failing to follow nursing policy and procedure for administering medication to clients. In May 1994, Ms. Brown was suspended for ten days for a similar infraction.
A single aggravated incident alone can constitute legal cause for the dismissal of a classified employee. Moreover, repeated improper conduct after lesser disciplinary action has been taken can also constitute legal cause for termination. Finally, the totality of individual lesser offenses can support termination. Ryder v. Department of Health and Human Resources, 400 So.2d 1123, 1126 (La.App. 1st Cir.1981). In this case, we have all three.
The egregiousness of the conduct exhibited by Ms. Brown in the handling of mental patients entrusted to her care, considered together with Ms. Brown's prior discipline history, certainly establish sufficient grounds to support her termination. See Williams v. Department of Health and Human Resources, 422 So.2d 1258 (La.App. 1st Cir.1982), writ denied, 429 So.2d 127 (La.1983) (which upheld the termination of a Practical Nurse 1 working at Earl K. Long Hospital, which was based on the employee's "loud and boisterous" complaints regarding the administration of the hospital, made in the presence of patients at the hospital; this conduct was deemed egregious and detrimental enough to warrant termination and unlike the case at issue herein, did not even involve inappropriate conduct directed at the patients).

CONCLUSION
For all of the foregoing reasons, we find no manifest error in any of the factual findings made by the Commission. Moreover, we find its determination of legal cause and the disciplinary action meted are fully supported by the record and certainly, not arbitrary or capricious, nor an abuse of discretion. Accordingly, the decision of the Commission terminating Ms. Brown is hereby affirmed at appellant's cost.
AFFIRMED.
McCLENDON, J., concurs.
NOTES
[1] Ms. Brown allegedly stated to other staff members in the hallway, "Why the hell you let that woman put the same clothes on?"
[2] During these proceedings, the parties stipulated that the proper appointing authority is Mr. Herbert Erwin, LCSW, Acute Care Hospital Administrator, Chief Executive Officer.
[3] To protect and ensure confidentiality, the patients involved in these incidents have been referred to by patient number in substitution of their names.
[4] We find it unnecessary to expressly detail the referee's factual findings regarding the second incident forming the basis for Ms. Brown's termination for the following reasons. First, we have found the record fully supports the factual findings regarding the asthma medication incident and the testimony of the appointing authority clearly established that it was the asthma medication incident, which was the true cause of Ms. Brown's termination. Herbert Erwin, CEO of ELMHS stated that the November 19, 2001 incident, involving the naked patient, was "really bad, but it wasn't anything that could cause termination." He further testified that the first incident, involving Ms. Brown's refusal to dispense the requested and warranted medication, alone was sufficient to warrant Ms. Brown's termination because it was "abusive and neglectful treatment" of a patient Therefore, we find it unnecessary to review the second incident. We do note, however, that the referee made specific and detailed factual findings regarding the second incident and our review of the record fails to reveal any manifest error in those findings.