KANDACE LOPEZ
v.
LSU HEALTH SCIENCES CENTER  SHREVEPORT
THOMAS A. WATSON
v.
LSU HEALTH SCIENCES CENTER  SHREVEPORT
Nos. 2006 CA 2059, 2006 CA 2060
Court of Appeal of Louisiana, First Circuit.
September 14, 2007.
JOEY W. HENDRIX, Shreveport, LA, Attorney for Plaintiffs-Appellees Kandace Lopez and Thomas Watson.
WILLIAM A. NORFOLK, TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P. Baton Rouge, LA, Attorney for Defendant-Appellant, LSU Health Sciences Center  Shreveport
Before BAGNERIS, LOVE, AND LOMBARD, JJ.[1]
This is an appeal from the decision of the Civil Service Commission taken by the Appellant, Louisiana State University Health Sciences Center (LSUHSC). The judgment appealed was rendered on behalf of the Appellees, Kandace Lopez and Thomas Watson. We affirm.

Facts
On or about June 4, 2005, a patient who had been in a motor vehicle accident, was admitted to LSUHSC through the emergency room. The patient was kept in room 15 where Diana Fields was the nurse on duty. Early morning on June 5, 2005, Nurse Fields noticed that the patient was having difficulty breathing and sought the assistance of Dr.'s Pattani and Swoboda[2]. The doctors performed certain medical procedures on the patient and left the room. Nurse Fields called the same two doctors when she noticed that the patient, once again, was having difficulty breathing. It is the Appellees' contention that Nurse Fields left the room to retrieve medication for the patient and encountered Nurses Thomas Watson and Donnie Dawes and asked them if they wanted to witness an intubation on the patient in room 15; they obliged.
Several unsuccessful attempts were made to intubate the patient. Dr. Nawabi, a Trauma Department Resident, requested activation of a trauma stat and activated a page to a Dr. Simpkins. Dr. Simpkins entered the room and determined that the patient needed to be intubated immediately. The Appellants maintain that Dr. Simpkins "called" for a knife or scalpel and then begin to yell when the nurses and doctors failed to respond to his request. The Appellees argue that Dr. Simpkins was "screaming, cursing and demanding" a knife while Dr. Swaboda, another doctor in the room, continuously repeated "no knife, no knife" ensuing a verbal altercation between the two doctors. It was then that Nurse Lopez entered the room and refused to honor Dr. Simpkins' request.
LSUHSC took disciplinary action against Nurses Lopez, Watson and Fields for failing to obey the orders of Dr. Simpkins. Nurse Lopez was also brought up on disciplinary charges for failing to call the House Manager since she was the Registered Nurse Supervisor 1, serving as charge nurse for activities and staff in the Emergency Department. The disciplinary action resulted in a pay reduction for the nurses.

Procedural History
Nurses Lopez and Watson appealed the disciplinary action to the Civil Service Commission. The appeals were consolidated; however, separate judgments were rendered for each. The Civil Service Commission granted both appeals finding that the situation presented an unusual circumstance. Nurse Fields did not appeal. LSUHSC applied to the Civil Service Commission for review and its application was denied. It is from this judgment that LSUHSC appeals.

LSUHSC's Assignments of Error
LSUHSC offers the following four assignments of error: (1) the Commission erred in finding that the "circumstances" and "conditions" existing at the time Ms. Lopez and Mr. Watson failed to comply with the legitimate orders of LSU physicians justified their failure to comply with the orders; (2) the Commission erred in finding that "Ms. Lopez could not be faulted for her failure to instruct subordinate nurses to follow the doctor's orders."; (3) the Commission erred in finding that Ms. Lopez could not be faulted for failing to call the House Manager in response to the situation in "Room 15."; and (4) the commission erred in limiting the effect of the testimony of Roy Clay, M.D., simply because Dr. Clay was not present to observe the events surrounding Dr. Simpkins' actions.

Standard of Review
The standard of appellate review for findings of fact made by referees of the Civil Service Commission is the same as the review of district court decisions, that is, the Commission referee's factual findings should not be disturbed unless they are clearly wrong or the referee committed manifest error. Usun v. LSU Health Sciences Center Medical Center of Louisiana at New Orleans, 02-0295 (La. App. 1 Cir. 2/14/03), 845 So.2d 491. The referee's decision as to whether the disciplinary action taken is based on legal cause and commensurate with the committed offense, should not be modified unless it is arbitrary, capricious, or characterized by abuse of discretion. Id.

Dunlap v. Louisiana State University Health Sciences Center, 05-1605, (La. App. 1 Cir. 6/9/06), 938 So.2d 109, 112.
In reviewing a decision of the Civil Service Commission, an appellate court should apply the clearly wrong or manifest error rule. McGee v. Department of Transportation and Development, 1999-2628 (La. App. 1 Cir. 12/22/00), 774 So.2d 1280, 1282.

Legal Analysis
The record reveals the parties accurately represented the facts. The only factual finding in question is whether Dr. Simpkins[3]' behavior was so incomprehensible to warrant the reaction, or non-reaction, from Ms. Lopez and Mr. Watson. LSUHSC raises many issues on appeal. However, the main question is whether the Civil Service Commission erred in granting Ms. Lopez' and Mr. Watson's appeal and reimbursing them for the reduction of pay in light of the facts.
As to Ms. Lopez, the record indicates that during the incident she was the emergency room "charge nurse." Ms. Lopez responded to the situation in room 15 and did not retrieve a knife nor did she instruct the other nurses to do so. Ms. Lopez failed to call the House Manager although the House Manager was automatically summoned by activation of the trauma beeper.
The record reveals that Mr. Watson, a registered nurse, entered room 15 after being invited to do so by Ms. Fields. Mr. Watson left the room to retrieve Diprovan, a drug requested by one of the anesthesia residents in the room. When Mr. Watson returned with the Diprovan he was instructed by the "patient's doctor" to get a knife and like Ms. Lopez, he would not comply.
The testimony of the witnesses corroborate that the "patient's doctor" acted very peculiarly when he screamed, cursed and yelled at the people around him. The situation presents a unique set of circumstances whereby the doctor obviously felt an urgency to tend to the patient immediately. However, the doctor's behavior was so unprofessional that it left Ms. Lopez and Mr. Watson feeling intimidated and uneasy about following his demands. There is testimony in the record that other LSUHSC employees heard the commotion and thought that a mental patient was causing the chaos.
The Civil Service Commission recognized the roles and the responsibilities of Ms. Lopez and Mr. Watson, however, in its judgment it correctly interpreted the situation as such:
The situation in room 15 was chaotic, and on some issues the witnesses' testimony varied. However, there are certain facts for which there is general agreement. Other that the patient's doctor, all of the witnesses who were present in Room 15 testified that shortly after entering the room, the patient's doctor began yelling obscenities while demanding a knife. There was also consensus that this was not a simple display of anger or frustration, but was instead an explosive outburst, succinctly described by Officer Booth as a "complete blind rage." A preponderance of the evidence also indicates that the patient's doctor entered the room and became enraged before Nurse Watson returned with supplies requested by Anesthesia personnel.
As far as Ms. Lopez and her failure to call the House Manager is concerned, the Civil Service Commission ruled:
While the proper procedure to resolve a dispute over directions given to the nursing staff might be to call the House Manager, this assumes that there would be time to make the call before the situation requiring intervention is resolved. However, in this matter events unfolded rapidly....
In addition, there is no formal policy in the record that establishes the circumstances under which the House Manager must be called. Absent a showing that LSUHSC policy required that Ms. Lopez call the House Manager to mediate the (post-intubation) dispute between Dr. Swoboda and the patient's doctor or that the House Manger must be called whenever there is an unusual event, I find that LSUHSC has not established that Ms. Lopez's failure to call the House Manager constitutes cause for discipline.
"Decisions of Commission referees are subject to the same standard of appellate review as decisions of the Commission itself, being the same standard of review as that for decisions of the district courts. Usun v. LSU Health Sciences Center Medical Center of Louisiana at New Orleans, 02-0295, p. 4 (La. App. 1st Cir. 2/14/03), 845 So.2d 491, 494. Hence, as to the Commission referee's factual findings, the reviewing court should apply the clearly wrong or manifest error standard of review. Bannister v. Department of Streets, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647. However, as to the determination of whether the disciplinary action taken is based on legal cause and commensurate with the offense, the Commission's decision should not be modified unless it is arbitrary, capricious, or characterized by abuse of discretion." Marsellus v. Department of Public Safety and Corrections 04-0860 (La. App. 1 Cir. 9/23/05), 923 So.2d 656, 659-660.
In the instant case, the Civil Service Commission reviewed the testimony and ruled that the disciplinary acts of reducing Ms. Lopez' and Ms. Watson's pay was not commensurate to the offense considering the rare situation they were in. After review of the testimony and the legal analysis provided by the Civil Service Commission we find that the Commission was not manifestly erroneous in its finding.

Decree
For the reasons stated herein, we affirm the judgment of the Civil Service Commission and reimburse Ms. Lopez and Mr. Watson for the reduction of back pay plus legal interest for the period specified in the judgment.
AFFIRMED
NOTES
[1] The Honorable Dennis R. Bagneris, Sr., Judge, the Honorable Terri F. Love, Judge, and the Honorable Edward A. Lombard, Judge, all members of the Fourth Circuit Court of Appeal, are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.
[2] The doctors in this opinion are referred to by last name only because the record is void of their first names.
[3] Dr. Simpkins is referred to as the "patient's doctor" by the Civil Service Commission and throughout the remainder of this opinion.