475 So.2d 368 (1985)
Johnny GUILLORY
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, DIVISION OF MAINTENANCE AND FIELD OPERATION.
No. CA 83 0528.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
Rehearing Denied September 11, 1985.
Patrick W. Pendley, Plaquemine, for Appellant.
A.J. Bonfanti, Dept. of Transp. and Development, Baton Rouge, for Appellee.
Robert R. Boland, Jr., Civil Service Legal Counsel, Dept. of Civil Service, Baton *369 Rouge, for Herbert L. Sumrall Director, Dept. of State Civil Service.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
This case is before us on remand from the Supreme Court of Louisiana in order to consider the merits of the contention of the plaintiff-appellant, Johnny C. Guillory, that the Louisiana State Civil Service Commission erred in upholding his discharge for insubordination. At the time of his firing, he had achieved permanent status as a Ferry Boat Master I employed by the Department of Transportation and Development (DOTD).
When the case was originally before us, we dismissed the appeal as untimely because the application for appeal, although timely mailed, was not received by the commission within the 30 calendar days provided by La. Const, art. X, § 12 (1974, amended 1982), since the final day of the period fell on a Sunday, a legal holiday. Guillory v. Department of Transportation and Development, 439 So.2d 657 (La.App. 1st Cir. 1983).
The Supreme Court granted writs, 442 So.2d 463 (La.1983), and held that since the final day for filing the appeal fell on a legal holiday, the appellant had until the end of the next business day to file his application. LSA-C.C.P. art. 5059. The application from the plaintiff was received on that Monday; therefore, the appeal was timely and should not have been dismissed. Our judgment was reversed and the case remanded to us for further proceedings. Guillory v. Department of Transportation and Development, 450 So.2d 1305 (La. 1984).
The record shows that on November 14, 1980, the plaintiff was serving as a captain on the tug boat, Ross Grand. Also serving as a captain was Leonard Galtier. However, plaintiff was considered as the senior captain in charge of the boat because he had been with the department longer than Galtier. Terry Alford, who is the plaintiff's wife, and Isaac Mott were deckhands on board at the time. The tug was ordered by radio to tie up at New Orleans, and Captain Otto Montichek was sent to bring the crew back to the fleet landing in Plaquemine. One of the deckhands had to remain to guard the boat for the weekend; therefore, the deckhands determined between themselves that Mott would stay, allegedly because Alford was sick. However, plaintiff's supervisor, William E. Murphy, sent word by Montichek that Alford was to stay with the boat. Alford did not stay, but returned to the fleet landing.
When the plaintiff, Alford and Montichek arrived, Murphy noticed that Alford had not stayed and he attempted to learn why. Murphy asked Montichek first. According to Montichek, he told Murphy that Alford was sick. Murphy testified that he did not hear Montichek respond to his question, so he asked Alford, and Alford did not answer. Alford admitted she did not tell Murphy she was sick. Murphy then approached the plaintiff to find out why Alford did not remain with the boat, because the plaintiff was her husband and captain of the boat. An argument between plaintiff and Murphy ensued, with the plaintiff becoming angry, stating that he told Alford not to stay, and that he would go outside the yard if Murphy wanted. No physical acts accompanied the words, but Murphy left the scene and called his supervisor, John Bickham, to report the incident. Bickham advised Murphy to write a letter and record what had happened, noting any witnesses.
Bickham immediately called his supervisor, Paul Griffin, and advised him of a confrontation between Murphy and the plaintiff, and that plaintiff had asked Murphy "to step outside the yard to settle an issue." Griffin testified that his immediate reaction was to discharge the plaintiff. Griffin reported the incident to his supervisor, Gerald Ray, and to Gorman Pounders, the Chief of Maintenance and Operations for DOTD.
On that same afternoon, Murphy called the plaintiff into his office to discuss the *370 incident further. Both parties testified that there was no additional confrontation at that time, and the plaintiff testified he considered the subsequent meeting a friendly one and "assumed it was all over."
On Monday, November 17, 1980, Murphy had the plaintiff drive with him to Baton Rouge so that the plaintiff could pick up a truck and drive it back to the landing. The plaintiff saw Bickham, but the incident was not mentioned. That same morning, Murphy and Bickham met with Griffin. Bickham recommended termination if what Murphy said was confirmed. Griffin then prepared a letter of termination which Pounders signed for the Department of Transportation and Development.
On Monday afternoon, Bickham took the letter with him to the fleet landing in Plaquemine. He had been instructed by Griffin to determine what had happened and, if the plaintiff confirmed Murphy's report, to give the letter of dismissal to the plaintiff. The plaintiff was asked to write a statement of exactly what had happened, but was not questioned orally by anyone. The other persons in the yard at the time of the incident were asked to write statements; they all refused. The plaintiff in his statement related:
I became angry and told him I did not want them to hear about it again and that she did not stay on the boat because I told her not to stay, and I did not want to hear about it again, and that I would go outside the yard with him if he wanted.
According to Bickham, "I had the letter of termination and when he gave me the statement admitting the charges of asking Captain Murphy outside, I in turn handed the letter of dismissal to Captain Murphy, he in turn handed [it] to Captain Guillory."
The plaintiff appealed the action of DOTD to the Civil Service Commission. At the hearing, he testified that Murphy had provoked the argument, and that he did not, in fact, tell Alford not to stay on the boat. He stated he told Murphy that because "if he was going to keep on, I would just go ahead and take the blame for it." He also testified that he suggested going outside to get away from the crews so they could talk. Murphy testified that he had simply asked the plaintiff a question and that he had not provoked him by shaking a finger in his face. Murphy stated that when the plaintiff said he would step outside the yard with Murphy, he took it to mean that the plaintiff wanted to fight him. However, he admitted that he was never fearful that the plaintiff was about to start hitting him, that they had known each other a long time, and that the plaintiff never threatened him at any other time. The referee found that plaintiff had threatened his supervisor without provocation, and upheld the plaintiff's termination because of insubordination.
The plaintiff, in his appeal to this court, alleges that the commission erred in finding legal cause to dismiss him, and that the appointing authority's decision to terminate was arbitrary and capricious.
Disciplinary action against a permanent classified civil service employee must be based on legal cause, that is, conduct which is prejudicial to the public service in which the employee in question is engaged, or detrimental to its efficient operation. Walters v. Department of Police of New Orleans, 454 So.2d 106 (La.1984). The fact that such employee has disagreements with co-employees or with superiors does not subject the employee to disciplinary action unless it is shown that such conduct produces results detrimental or prejudicial to the efficiency of the public service. Portis v. Department of Corrections, Hunt Correctional Center, 407 So.2d 435 (La.App. 1st Cir.1981). Moreover, dismissal from permanent employment is the most extreme form of disciplinary action that can be taken against classified state employees; thus, cause justifying some lesser form of disciplinary action might not justify a dismissal. Cartwright v. Department of Revenue and Taxation, 460 So.2d 1066 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1320 (La.1985).
The commission has the duty to decide whether the appointing authority had good *371 or lawful cause for taking disciplinary action, and if so, whether the punishment imposed is commensurate with the dereliction. 454 So.2d at 113. The supreme court in Walters stated: "In judging the commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission's order unless it is arbitrary, capricious or characterized by an abuse of discretion." 454 So.2d at 114.
In the instant case, the fact that the plaintiff was in a heated discussion with Murphy, became angry and offered to "go outside the yard" with him is not denied. Thus the factual finding by the commission that the plaintiff threatened his supervisor without provocation is not clearly wrong, and will not be disturbed. A reviewing court is not to disturb the factual findings of the civil service commission in the absence of manifest error. 454 So.2d at 114.
However, we do feel that the commission acted arbitrarily and capriciously in determining that there was legal cause for dismissal of the plaintiff, based on this act of the plaintiff. There was no showing that the conduct threatened the efficiency of the public service, that is, the operation of the fleet landing and its tug boats.
This court has recognized that respect for one's superiors and obedience to lawful orders and directives of those in charge are essential to the efficient operation of the institution. 407 So.2d at 437. See also Hamilton v. La. Health & Human Resources Adm'n, 341 So.2d 1190 (La.App. 1st Cir.1976), writ denied, 344 So.2d 4 (La. 1977). In both of the above cited cases, the employee disobeyed a direct order of a superior, in addition to showing disrespect over a prolonged period of time. In one instance, the belligerence and disobeyal of an order occurred in front of inmates, the very persons for whose conduct the offending employee was responsible. 407 So.2d at 437. This court has also recognized that one incident of aggressive behavior toward a superior, where no order was disobeyed, and where the employee's service record was otherwise unblemished, did not warrant termination. 460 So.2d at 1068.
In the instant case, the witnesses who had previously declined to give written statements to DOTD all testified that they did not hear anything said between the parties; thus, they had no knowledge of the plaintiffs remark and could not be influenced by it. Murphy testified he was never in physical fear. Moreover, the plaintiff did not refuse to obey any order since he answered Murphy's question, albeit angrily. The incident lasted only a few minutes and the plaintiff did not show any further disrespect, but in fact, talked with Murphy civilly a short while later and obeyed Murphy's direct order on the following Monday without question. The plaintiffs performance of his duties was not seriously impaired; he was not on his boat at the time of the incident, but in the yard at the fleet landing. In fact, the record shows that, upon order, he left his boat adequately guarded in another location, and was in the yard waiting to go home. Testimony at the hearing revealed that the plaintiff had been employed by DOTD as a boat captain for four years, that his work record was satisfactory and that he had never been disciplined before.
It is important to note that the defendant places much emphasis on dismissal of the plaintiff because of his corrobating statement. In a recent case, the U.S. Supreme Court state, "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to being terminated, as a fundamental due process requirement. Cleveland Board of Education v. Loudermill, ___ U.S. ___; 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The record is completely devoid of proof that the plaintiff was ever notified of the charge against him or of the employer's evidence prior to simply being asked to write his account of the incident.
*372 For the above and foregoing reasons, we reverse the commission's decision and remand the case to the commission for further proceedings consistent with this opinion. Costs of this appeal are to be borne by the defendant.
REVERSED AND REMANDED.