GROVER L. COVINGTON, Chief Judge.
An employee of Charity Hospital appeals her suspension for 15 days without pay, which resulted from a physical altercation with another employee in the Low Risk Nursery. An appeals referee of the Civil Service Commission had affirmed the suspension, while acknowledging that appellant was not the aggressor in the fight and that she reacted “spontaneously or reflexively” to the first blow by the other employee. Appellant contends here (1) that she should not be punished for reacting instinctively and in self-defense to an unprovoked attack by another employee and (2) the appointing authority should be es-topped from taking any disciplinary action against her because of its own inaction regarding the other employee, who had previously caused disturbances and racial tension among employees and had been reported, to no avail.
We agree and reverse the decision of the appeals referee.
Appellant is a black Licensed Practical Nurse I (LPN) who has been employed in her present position for seven years, and prior to this incident, had a blameless record. The other employee involved, a white Registered Nurse named Penny Brown, was a temporary contract employee at Charity Hospital in the Low Risk Nursery. The incident in question arose when appellant was pushing an open crib down an aisle of the nursery towards its allotted position after feeding the infant in it. Penny Brown, who was bending over another crib, straightened up and turned into the crib appellant was pushing and bumped her hip. Appellant said “Excuse” and Brown responded by bringing her closed fist up and hitting appellant in the face. Appellant almost instantaneously reacted by returning the blow, and a fight ensued between the two women which required the intervention of others to end it. Brown shouted obscenities and racial slurs at appellant during the fight, and continued to do so after they were separated. The two women were verbally suspended, pending investigation of the incident, which suspension was later confirmed in writing; both women thereafter received 15-day suspensions without pay for continuation of the altercation without regard for who initiated the incident.
Appellant argues that her response to the unjustified and unprovoked first blow struck by Penny Brown was instinctive and in self-defense, as was the remainder of her part in the incident. She contends that her self-protective actions should not be punished because of her basic right to self-defense; and moreover, the appointing authority in effect failed to provide her a safe workplace by allowing Penny Brown to create unrest among the workers despite previous complaints by other employees of the Hospital. Thus, she claims, she was placed in an untenable situation not of her making by the lax attitude of the appointing authority, who is now trying to penalize her for responding to the situation.
The record supports both of these contentions. All witnesses, but one, to the incident substantiated appellant’s testimony that the initial physical contact between Brown and the crib appellant was pushing was accidental, and that appellant immediately said “Excuse.” The one witness who stated that the contact was deliberate admitted readily upon questioning that he did not actually see this contact and was influenced by Brown’s claim that appellant deliberately pushed the cart into her. It is undisputed that Brown threw the first blow, and that appellant immediately reacted, rather than deliberating her action. Appellant had no previous quarrels with Brown; however, Brown had demonstrated irascible and antagonistic behavior earlier in the nursery that same day, both to appellant and to another black LPN, Valerie Johnson, by “hollering” at both ladies and calling Johnson a liar as Johnson attempted to give her report to appellant, who was her relief.
The record also contains testimony of several of Brown’s black co-workers who had complained to various supervisory personnel of unpleasant incidents involving Brown, all racist in nature, ranging from *456 ethnic slurs and insults by Brown to physical grabbing of personnel and objects held by personnel. No written record was ever compiled on any of these complaints by the personnel who received them; nor does it appear that any effort was made to reprimand or to discuss these complaints with Brown. The record further suggests that Brown herself recognized a problem in her behavior by asking to see the psychiatrist on duty after the incident in question. That she had a deeply ingrained racist attitude was made obvious at the beginning of her employment, when she admitted to the person responsible for her orientation that she had never been around blacks very much and had been taught not to like them.
The cumulative effect of all these factors was to make appellant [or any other of Brown’s co-workers] an unwitting target for Brown’s aggression. The appointing authority may not now protest or sanction appellant’s self-defensive actions under these circumstances. Penny Brown threw the first blow and continued the fight after appellant’s instinctive reaction. We dismiss as unpersuasive the argument advanced by the employer that the suspension was justified because of the danger in which the helpless infants in appellant’s care were placed by her actions. While we certainly do not condone brawling in such an environment, we note that appellant neither provoked the incident in question nor chose to be attacked in the nursery. Rather, she responded automatically to inexcusable physical provocation and degrading, obscene, ethnic verbal provocation by a “professional” who should have known better, and who did her best to continue the unpleasant scene, even continuing to shout her inflammatory racial filth[1] after being forcibly separated from appellant by bystanders. Any such concern on the part of the authority would have been better and more believably manifested by removing an obviously unstable employee, namely Penny Brown, from the vicinity of her helpless patients and hapless co-workers. Therefore, we find that appellant’s action in this instance does not constitute legal cause for suspension or disciplinary action. It was Brown’s conduct which impaired the efficiency of the public service and bore a real and substantial relation to efficiency and the orderly operation of the Low Risk Nursery. See Guillory v. Department of Transportation and Development, Division of Maintenance and Field Operation, 475 So.2d 368 (La.App. 1st Cir.1985).
We note in conclusion the indifferent attitude and careless methods of those personnel responsible for investigating this incident and the previous complaints[2] regarding Penny Brown, as well as the uncooperative attitude they evinced in responding to the subpoena duces tecum by appellant’s counsel for the hearings below, which necessitated a continuance for the purpose of compelling an adequate return. Therefore, appellant is awarded the sum of $500.00 as attorney’s fees pursuant to Rule 13.35 of the Civil Service Commission.
We do not address appellant’s contentions of discrimination by the appointing authority in view of our finding that the disciplinary action taken was unwarranted under the facts of this case.
The decision of the appeals referee is reversed, and the appointing authority is ordered to recompense appellant for the 15 days of her suspension, and to expunge appellant’s record. Costs of this appeal in the amount of $50.00 are assessed against appellee, the Department of Health and *457 Human Resources, Office of Charity Hospital of Louisiana at New Orleans.
REVERSED AND RENDERED.
SAVOIE, J., concurs in the result.

. For example, Ms. Brown's address to Ms. Theodore, cleansed of such filth and stated in more acceptible words, was to call her a fornicating black mother of a dog.

. One basis for the referee’s opinion was that the supervisory personnel who received the other complaints regarding Penny Brown were not Brown’s direct supervisors, and that the appointing authority was thereby excused somehow from knowledge of Brown’s actions. This reasoning is unpersuasive. Knowledge of any of these other supervisory personnel, who themselves were directly over those persons complaining, was sufficient for the appointing authority to be on notice of Brown’s behavior. The lack of communication further up the "chain of command” at Charity Hospital may not be attributed to appellant or any of Brown’s co-employees.