784 So.2d 657 (2001)
Ulysses WILLIAMS
v.
ORLEANS LEVEE DISTRICT, BOARD OF COMMISSIONERS.
No. 2000 CA 0297.
Court of Appeal of Louisiana, First Circuit.
March 28, 2001.
Rehearing Denied May 14, 2001.
W. Patrick Klotz, New Orleans, for Plaintiff Appellee/Cross-Appellant Ulysses Williams.
*658 Alan Dean Weinberger, New Orleans, for Defendant Appellant/Cross-Appellee Board of Commissioners of the Orleans Levee District.
Before: GONZALES, FOGG, and PETTIGREW, JJ.
FOGG, J.
In this civil service case, the Board of Commissioners of the Orleans Levee District (the "Board") appeals a judgment of the Civil Service Commission, modifying the disciplinary action taken against an employee from the termination of his employment to a 30-day suspension. The employee also appeals, seeking a reduction of the 30-day suspension. For the following reasons, we reverse the decision of the Civil Service Commission and reinstate the termination of employment.
The facts in this case are undisputed. On Saturday, February 15, 1997, Ulysses Williams, an employee of the Board serving as an Administrative Manager 5 with permanent status, arrived at the Board's offices which were located at the Administrative Building of the New Orleans Lake-front Airport. Upon arriving in the lobby of the building, Mr. Williams was informed by Officer James Berndt of the Orleans Levee Board Police Department, that, by order of the President of the Board, he was not allowed to enter the upstairs offices of the Board.
Mr. Williams immediately contacted his attorney, and his attorney contacted the media. Approximately thirty minutes later, Mr. Williams' attorney arrived, as did numerous members of the television media. Members of the media approached Officer Berndt, inquiring as to "where the arrest would take place." Officer Berndt immediately contacted James Huey, the President of the Board and the appointing authority for the Orleans Levee District, who was in his upstairs office.
Shortly thereafter, President Huey came down the stairs. A conversation ensued between Mr. Williams, his attorney, and President Huey. During that conversation, Mr. Williams and his attorney demanded an explanation from the president as to the legal basis of his order restricting admission to the Board's offices. The exchange occurred as television news cameras from several local television stations filmed the events.
The following Monday, Mr. Williams was suspended. On March 11, 1997, he received a letter advising him that the Board proposed to dismiss him from his employment. He was terminated from his employment on April 3, 1997. Mr. Williams appealed the termination to the Civil Service Commission.
After hearing the matter, a referee for the Civil Service Commission found that Mr. Williams' demeanor "on February 15, 1997 gave the impression that [he] was questioning the authority of the President of the Board of Commissioners for the Orleans Levee District." The referee concluded that Mr. Williams was rude and acted disrespectfully towards President Huey, and that this behavior constituted cause justifying disciplinary action. However, the referee held that the appropriate punishment in this matter was a 30-day suspension rather than termination. The referee ordered Mr. Williams reinstated as of the date of termination with back pay and legal interest. The referee also awarded Mr. Williams $1,500.00 in attorney's fees. Each party filed an application for review to the Civil Service Commission; both were denied. This appeal followed. On appeal, the Board seeks reinstatement of Mr. Williams' termination, while Mr. Williams seeks reduction of the disciplinary action taken by the referee.
A permanent classified civil service employee cannot be disciplined without *659 cause. LSA-Const. art. 10, § 8. Cause exists when the employee's conduct is detrimental to the efficient and orderly operation of the public service that employed him. Greenleaf v. DHH, Metro. Dev. Ctr., 594 So.2d 418 (La.App. 1 Cir.1991), writ denied, 596 So.2d 196 (La.1992); Claverie v. L.S.U. Med. Ctr. in New Orleans, 553 So.2d 482 (La.App. 1 Cir.1989). The appointing authority has the obligation to prove the impairment. Saacks v. City of New Orleans, 95-2074 (La.App. 4 Cir. 11/27/96), 687 So.2d 432, writ denied, 97-0794 (La.5/9/97), 693 So.2d 769, cert. denied, 522 U.S. 914, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997).
Pursuant to Article 10, § 12(A) of the Louisiana Constitution, the Civil Service Commission has the exclusive power and authority to hear and decide all removal and disciplinary cases; it may appoint a referee to hear and decide such cases. The decision of a referee is subject to review by the Civil Service Commission on any question of law or fact upon the filing of a timely application for review with the Civil Service Commission. LSA-Const. art. 10, § 12(A).
The final decision of the Civil Service Commission is subject to review by the court of appeal on any question of law or fact. LSA-Const. art. 10, § 12(A). A reviewing court should not disturb the factual findings made by the Civil Service Commission in the absence of manifest error. Walters v. Dep't of Police of City of New Orleans, 454 So.2d 106 (La.1984); Greenleaf v. DHH, Metro. Dev. Ctr., 594 So.2d at 427. Furthermore, an appellate court should not reverse the Civil Service Commission's determination of the existence of cause for a disciplinary action unless the decision is arbitrary, capricious, or an abuse of discretion. Walters v. Dep't of Police of City of New Orleans, 454 So.2d at 114. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Burst v. Bd. of Com'rs, Port of New Orleans, 93-2069 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, writ not considered, 95-0265 (La.3/24/95), 651 So.2d 284.
In this case, the Civil Service Commission found that Mr. Williams' willful employment of legal counsel and media to address his grievances impaired the efficient operation of the public agency, and therefore constituted cause for disciplinary action. This conclusion is clearly supported by the record; it is neither manifestly erroneous nor an abuse of discretion. Having affirmed the Civil Service Commission's determination that there was sufficient legal cause to discipline Mr. Williams, this court must determine whether the penalty imposed upon this employee was proportionate to the offense.
Each party placed into evidence videotapes of newscasts depicting some of the events of February 15, 1997. The tapes show a tense verbal exchange during which Mr. Williams' attorney stated, "You can't tell an authorized civil servant he can't go to work without the authorized paperwork, Jim." Mr. Williams is shown asking President Huey, "Why am I being denied access to my office?" Also, as the cameras filmed, Mr. Williams' attorney questioned Officer Berndt who advised the attorney he would restrain Mr. Williams if he attempted to enter the upstairs offices. Both Mr. Williams and his attorney further expressed their views, which were largely unfavorable of the situation and other events concerning the Board, to the media. Several New Orleans area television stations aired edited versions of the day's events, along with the comments of newscasters, later that evening.
In his testimony at the hearing before the referee, President Huey described Mr. Williams' conduct on February 15, 1997 as "the paramount of insubordination, embarrassment to the Orleans Levee Board and *660 [himself], personally, ... coming from an individual who ... held a very high position within the Orleans Levee District." He opined that Mr. Williams "thought he was coming in to take over command" and stated that "[i]t would be impossible [for the Board] to function if employees were allowed to do what Mr. Williams did." He testified that Mr. Williams' actions were particularly injurious considering his position as Assistant Managing Director. He stated that he expected the upper echelon of classified employees to conduct themselves in a professional and ethical manner.
Mr. Williams testified that, after Officer Berndt told him that he could not go to his office, he went to a public restaurant on the first floor of the building. He felt something was "amiss" and contacted his attorney with the expectation that his attorney would come to the offices of the Board to determine the legal basis for the denial of access to his office. After discussing the matter with his attorney in the restaurant, Mr. Williams and his attorney re-entered the lobby of the building where representatives of the media waited. Shortly thereafter, President Huey came partially down the stairs. Mr. Williams, his attorney, and various media approached President Huey. The verbal exchange described above occurred.
It is undisputed that President Huey, as appointing authority for the agency, made the administrative decision to limit access to the Board's office on that particular Saturday. The parties agree that this decision was clearly within his authority and constituted a legal directive. Mr. Williams, upon feeling disturbed by this action, intentionally and purposefully disregarded the established procedures for an employee to pursue his grievance by using legal counsel and television media to interrogate and expose the appointing authority to embarrassment and ridicule. This behavior by a high level civil servant severely impaired the efficient operation of the public agency. In light of the manner in which this employee pursued his grievance and the resulting degree of disruption to the agency, we find that the Civil Service Commission erred in reducing the disciplinary action taken by the Board. Furthermore, we find the termination of Mr. Williams' employment was reasonable under these circumstances.
Accordingly, the judgment of the Civil Service Commission reinstating Ulysses Williams to his position with the Board with back pay and awarding attorney's fees is reversed. The original disciplinary action imposed by the Board ordering termination of Ulysses Williams' employment is hereby reinstated. Costs are assessed against Ulysses Williams.
REVERSED.