# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CA 0083

ALEX MIKKELSEN

VERSUS

FLOOD PROTECTION AUTHORITY - EAST

Judgment Rendered: **SEP 1 9 2025**

\* \* \* \* \* \*

On Appeal from the
State of Louisiana Civil Service Commission

Docket No. S-18851

Honorable David L. Duplantier, Chairman
Brent C. Frederick, Referee

\* \* \* \* \* \*

| | |
|---|---|
| C. Theodore Alpaugh, III<br>Claude A. Schlesinger<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellant<br>Alex Mikkelsen |
| Edward F. Harold<br>Lawrence J. Sorohan, II<br>New Orleans, Louisiana | Counsel for Defendant/Appellee<br>Flood Protection Authority - East |

\* \* \* \* \* \*

**BEFORE: McCLENDON, C.J., GREENE AND STROMBERG, JJ.**

GREENE, J, concurs without reasons.

**McCLENDON, C.J.**

A permanent-status civil service employee seeks review of a Civil Service Commission decision affirming his termination. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

Alex Mikkelsen began his full-time employment with the East Jefferson Levee District Police Department, a division of the Southeast Louisiana Flood Protection Authority-East, (hereinafter "SLFPA-E"), in May 2020. Officer Mikkelsen, who served as a permanent-status police officer, worked the overnight "C Platoon" from 5:00 p.m. to 5:00 a.m. alongside Officer Jonathan Downing, under the supervision of Sergeant Gerard Duplessis and Lieutenant Coy Canulette. Officer Mikkelsen's duties included patrolling and conducting police activities in Jefferson Parish, with a focus on the areas along the Mississippi River and Lake Pontchartrain.

SLFPA-E's headquarters, located at 1100 Reverend Richard Wilson Drive in Kenner, Louisiana, is known as the "Safehouse." Officers report to the Safehouse at the beginning of each shift for roll call and to discuss their assignments for that day, which usually lasts about thirty minutes. Thereafter, there are *no specific duties* that require officers to be at the Safehouse.

In March 2022, SLFPA-E's Information Technology Department ("IT Department") noticed a sharp increase in data usage coming from the Safehouse, and an internal investigation began in order to determine the reason for the increase. The investigation revealed that the data spikes occurred during C Platoon's shifts. The IT Department also identified the devices using the bandwidth as Xbox gaming systems and found large amounts of incoming data were from Xbox Live. The IT Department determined that Netflix content was also being streamed.

Based on this information, Terri Durnin, the Captain/District Commander for the East Jefferson Levee District Police Department, began to monitor, among other things, the swipe card access required to enter the Safehouse and the security camera footage around the perimeter of the Safehouse. According to Captain Durnin, it became clear

2

that all of the C Platoon officers were spending an inordinate amount of time at the Safehouse, which coincided with the dates of the increased internet activity.[1]

Following this investigation, on October 19, 2022, Kelli Chandler, Regional Director for SLFPA-E, issued a pre-deprivation notice to the officers involved, including Officer Mikkelsen, under Civil Service Rule 12.7, advising that discipline *up to and including termination* was being considered for, among other things, alleged dereliction of duty. The notice also indicated that "[t]he badge data for the investigatory period reveals that there is a clear correlation between the excessive data usage dates and the movements of [Officer] Mikkelsen coming and going from the EJLD PD Safehouse premises and time-stamped video from the installed camera system was matched[.]" The notice also provided specifics on five dates: May 20, 2022; May 26, 2022; May 30, 2022; May 31, 2022; and June 22, 2022. The notice further indicated that "the only recognized and permissible reasons" for an officer to be at the Safehouse was if an officer was "off-assignment" to refuel or obtain personal items, to write reports for previously handled service calls, for lunch breaks (30 minutes), authorized breaks (15 minutes), or restroom breaks.

On October 26, 2022, Officer Mikkelsen submitted a written response through counsel. After reviewing that response, Director Chandler issued a Final Disciplinary Notice on October 31, 2022, terminating Officer Mikkelsen's employment effective November 1, 2022. The three other members of C Platoon were also terminated as a result of the investigation.

Officer Mikkelsen timely appealed the disciplinary action to the Louisiana State Civil Service Commission (the "Commission"). A Referee conducted evidentiary hearings on March 30, August 10, and August 11, 2023. Officer Mikkelsen also sought summary disposition on the grounds that the pre-deprivation and final notices did not satisfy the requirements of Civil Service Rules 12.7 and 12.8.

---

[1] While Officer Mikkelsen maintained that the investigation did not involve anyone other than C Platoon employees, Captain Durnin testified that B Platoon, the other platoon that worked the night shifts not covered by C Platoon, were initially part of the investigation. The investigation also contained records of B Platoon activities. However, Captain Durnin testified that B Platoon "[w]as out of it" after the data usage began to be compiled. With regard to B Platoon, Captain Durnin explained "it was one day, maybe two, and it wasn't as high." Rather, high data usage occurred during C Platoon's shift.

3

In a decision dated August 1, 2024, the Referee denied Officer Mikkelsen's motion for summary disposition, finding that the notices satisfied Civil Service Rules 12.7 and 12.8. The Referee also upheld Officer Mikkelsen's termination.[2] The Referee found, among other things, that SLFPA-E proved Officer Mikkelsen, rather than patrolling his designated areas, spent an inordinate amount of time at the Safehouse on specific dates. The Referee further found that the misconduct was "manifestly detrimental to the state service" and warranted dismissal. Because Officer Mikkelsen did not file an application to request that the Commission review the Referee's decision, the Referee's decision became the final decision of the Commission, and is subject to appellate review by this court. See LSA-Const. art. X, § 12. For clarity, we will refer to the Referee's ruling and findings as that of the Commission.

Officer Mikkelsen timely appealed the Commission's decision to this court. On appeal, Officer Mikkelsen asserts six separate assignments of error, which we have summarized into three assignments of error below:

1) **Procedural Due Process / Notice Error**
The Commission erred in concluding that the pre-deprivation and final disciplinary notices complied with Civil Service Rules 12.7 and 12.8.

2) **Lack of Cause for Discipline**
The Commission manifestly erred in concluding that there was cause for discipline because Officer Mikkelsen's conduct did not violate SLFPA-E's policy and/or impair the efficient operation of the public service.

3) **Excessive or Disproportionate Penalty**
Even if some misconduct occurred, the Commission acted arbitrarily or capriciously in affirming the termination because the discipline imposed was not commensurate with the alleged infractions and, therefore, constitutes an excessive penalty and an abuse of discretion.

**LAW**

Tenured or classified civil service status is a property right and cannot be taken away without due process. See LSA-Const. art. I, § 2; **Moore v. Ware**, 2001-3341 (La. 2/25/03), 839 So.2d 940, 948. As explained in **Cleveland Bd. of Educ. v. Loudermill**, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), this due process right for civil service employees is a constitutional guarantee.

---

[2] Two other C Platoon officers appealed to the Commission, and the Commission also affirmed their terminations.

4

No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. LSA-Const. art. X, § 8(A). "Cause" for the discipline of such an employee includes conduct prejudicial to the public service or detrimental to its efficient operation. **Kirk v. Dep't of Health and Hospitals**, 2013-1591 (La.App. 1 Cir. 5/2/14), 147 So.3d 202, 204. The employer must prove by a preponderance of the evidence that the employee's conduct did, in fact, impair the efficiency and operation of the public service in which the employee is engaged. **Id.** at 204-05.

A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate Commission, and the appointing authority (the employer of an employee in classified civil service) bears the burden of proof on appeal as to the facts. LSA-Const. art. X, § 8(A). Thereafter, the final decision of the Commission shall be subject to review on any question of law or fact to the court of appeal wherein the Commission is located. LSA-Const. art. 10, § 12(A).

Civil Service Commission decisions are subject to the same standard of review as a decision of a district court. **Johnson v. Dep't of Health and Hospitals**, 2000-0071 (La.App. 1 Cir. 2/16/01), 808 So.2d 436, 438; see **Usun v. LSU Health Sciences Ctr. Med. Ctr.**, 2002-0295 (La.App. 1 Cir 02/14/03), 845 So.2d 491, 494. On review, great deference is given to the factual determinations of the Commission, and an appellate court will not overturn those determinations in the absence of clear or manifest error. **Kirk**, 174 So.3d at 204. An appellate court should not reverse the Civil Service Commission's determination of the existence of cause for a disciplinary action unless the decision is arbitrary, capricious, or an abuse of discretion." **Williams v. Orleans Levee District, Board of Commissioners**, 2000-0297 (La.App. 1 Cir. 3/28/01), 784 So.2d 657, 659, writ denied, 2001-1730 (La. 9/14/01), 796 So.2d 686. However, with respect to the Commission's decisions as to jurisdiction, procedure, and interpretation of laws and regulations, the judicial function is not so limited. **Marcantel v. Dep't of Transp. & Dev.**, 590 So.2d 1253, 1256 (La.App. 1 Cir. 1991). The "error of law" standard applies to the legal aspects of a mixed question of law and fact presented in review of an administrative decision. See **Id.**

5

When evaluating the Commission's determination as to whether the disciplinary action imposed is commensurate with the infraction, an appellate court should not modify the Commission's action unless it is arbitrary, capricious, or an abuse of discretion. **Kirk**, 147 So.3d at 204, <u>citing</u> **Bannister v. Dep't of Streets**, 95-0404 (La. 1/16/96), 666 So.2d 641, 647. "Arbitrary or capricious" means the absence of a rational basis in the record for the action taken. **Id.**

## DISCUSSION

<u>Procedural Due Process/Notice Error</u>

On appeal, Officer Mikkelsen asserts that SLFPA-E, the appointing authority herein, failed to comply with Civil Service Rules 12.7 and 12.8, which address the pre-deprivation and final disciplinary notices, respectively. Rule 12.7 provides that "[w]hen an appointing authority proposes to discipline or remove a permanent employee, the employee must be given oral or written notice of the proposed action, the factual basis for and a description of the evidence supporting the proposed action, and a reasonable opportunity to respond." Further, Rule 12.8(b) requires the appointing authority to "describe in detail the conduct for which the action is being taken including, where pertinent, dates, times, places, and names of persons directly involved in or affected by such conduct[.]"

Rule 12.7 codifies the principle elucidated in **Loudermill**, "i.e. due process entitles an employee threatened with termination to notice of the charges lodged against him, and an opportunity to tell his side of the story before termination." **Lange v. Orleans Levee Dist.**, 2010-0140 (La. 11/30/10), 56 So.3d 925, 930. The purpose of the pre-termination hearing is not to determine with certainty whether termination is appropriate; instead, the hearing serves as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." **Id.** at 930-31, <u>quoting</u> **Loudermill**, 470 U.S. at 545-46, 105 S.Ct. at 1487. When a civil service employee is entitled to a full evidentiary hearing after termination, and retroactive relief such as reinstatement is available, pre-termination due process is satisfied by notice and an opportunity to respond. **Lange**, 56 So.3d at 931. In other words, only the *barest* of a

6

pre-termination procedure is required when an elaborate post-termination procedure is provided. **Id.**

Further, Rule 12.8 requires that a permanent employee must be given written notice of the action before the action becomes effective, and the notice must "describe in detail the conduct for which the action is being taken." **Lazard v. Orleans Levee Dist.**, 2014-1423 (La.App. 1 Cir. 4/24/15), 2015 WL 1882664 at *3 (unpublished). This rule "plainly comprehends a fair and clear statement of the misconduct of the employee including, wherever pertinent, times, dates, places[,] and amounts." **Id.** (internal quotation and citation omitted). The purpose of this rule is to apprise the employee in detail of the charges and limit any subsequent proceedings to the stated reasons. **Id.** (internal citation omitted.)

On appeal, Officer Mikkelsen avers that neither the October 19, 2022 pre-deprivation notice nor the October 31, 2022 final disciplinary notice satisfy the requirements of Rules 12.7 and 12.8. He maintains that the notices, while they provide broad timeframes of date usage, do not indicate who used the data or for what purpose.

Officer Mikkelsen also contends that SLFPA-E failed to show what specific policy he violated. Officer Mikkelsen maintains that although the notices indicated that he, along with the other employees, violated Subsections D, F, and G found in Section 7 of the SLFPA-E Employee Handbook ("the Handbook"),[3] and certain provisions of the East Jefferson Levee District Police Department Code of Conduct,[4] neither of the notices specify how any of the referenced provisions were violated. Rather, they merely indicate that Officer Mikkelsen, as well as his fellow employees, spent an inordinate amount of

---

[3] Subsection D provides that "Failure to perform assigned duties or to follow a supervisor's instructions may be cause for disciplinary action up to and including termination." Subsection F provides that "levee district equipment for personal use is prohibited. No private projects for individuals shall be done on levee district premises or while on duty." Subsection G provides that "The following activities will not be tolerated and will be cause for the recommendation of disciplinary action, up to and including termination: Willful destruction or theft of Agency property or the property of others on Levee District property, operation of equipment the employee is not trained to use; unauthorized modification or unauthorized use of SLFPA-E or levee district property or the property of others."

[4] Officer Mikkelsen notes that the two notices also reference the East Jefferson Levee District Police Department Code of Conduct, including provisions that address personal and immoral conduct (Articles 25 and 27), instructions from an authoritative source (Article 54), unsatisfactory performance (Article 55), disobedience of orders (Article 56), and violation of rules (Article 24). Further, Article 5 of the Code of Conduct provides that members are "deemed to have knowledge of these rules[.]"

time at the Safehouse. Officer Mikkelsen concludes that SLFPA-E failed to comply with Civil Service Rules 12.7 and 12.8.

In opposition, SLFPA-E maintains that Officer Mikkelsen's claims of insufficiency of the notices are belied by the fact that his counsel wrote a seven-page, single-spaced response to the pre-deprivation notice.[5] SLFPA-E further contends that review of the notices makes plain that it complied with the Civil Service Rules. SLFPA-E avers that the notices discuss in detail the conduct, Xbox usage, and inordinate amount of time Officer Mikkelsen spent in the Safehouse. SLFPA-E also avers that the notices describe the origins and conduct of the investigation, the dates and times of the misconduct, and the rules and guidelines at issue. SLFPA-E concedes that the notices did not identify who was responsible for the data use among C Platoon at any given time. However, SLFPA- E asserts the failure to identify the user does not undermine the conclusion that all members of C Platoon were present when Xboxes were being used in the Safehouse, and no one else was present in the Safehouse at those times.

Further, SLFPA-E avers that the two cited Civil Service Rules do not require an appointing authority to identify any personnel policy, rule, or regulation in a disciplinary notice, especially one narrowly tailored to the specific conduct. Rather, SLFPA-E asserts that the question in a civil service hearing is whether the conduct constituted "cause," or conduct that impairs the efficient and orderly operation of the public service. See Civil Service Rules 12.2(b) and 1.5.2.01.[6] Considering the foregoing, SLFPA-E concludes that the Commission properly determined that the notices provided sufficient detail.

Here, both the pre-termination and final disciplinary notices sent to Officer Mikkelsen indicate the Safehouse is considered closed after 4:30 p.m. each day, and while night shift police platoons are allowed access, such access "should be infrequent." Both notices provide that "[a]ll night shift police personnel have patrol assignments, both

---

[5] SLFPA-E contends that Officer Mikkelsen never asserted that he misunderstood the charges against him, denied the conduct, or claimed the conduct was authorized. Rather, SLFPA-E avers that Officer Mikkelsen's response was the general proposition that he had responsibilities that would at some points require him to be at the Safehouse.

[6] Civil Service Rule 12.2(b) provides that "[a]n appointing authority may discipline or remove a permanent employee for cause." Civil Service Rule 1.5.2.01 defines cause as "conduct which impairs the efficient or orderly operation of the public service."

proactive and reactive, encompassing their entire work shifts, allowing for brief periods for lunch or break which may or may not be spent at the [Safehouse]." Further, the notices detail the purported dates, times, and duration Officer Mikkelsen was present at the Safehouse. For example, the May 20, 2022 date, which is referenced in both notices, indicates:

> Safehouse video surveillance shows Mr. Mikkelsen to be in the EJLD PD Safehouse facility between the hours of 5:20 p.m. and 8:06 p.m. During this time frame Mr. Mikkelsen is seen entering the facility with a backpack and an air fryer. Total time of approximately 2 hours and 45 minutes. (The Daily Recap log shows that you were assigned to patrol "Lake/River," the Safehouse is not listed as part of your assignment).

There are additional dates in both notices that provide similar details. Both notices indicate that "the gaming activity coincides with the dates and times that you and the other members of Platoon C were captured on Safehouse surveillance video. Video surveillance shows that you were at the Safehouse during the periods that gaming activity was detected by the IT Department." Further, we note that both notices, in addition to referencing a number of other provisions, cite Subsection 7-D of the Handbook for the proposition that "[f]ailure to perform assigned duties or to follow a supervisor's instructions may be a cause for disciplinary action up to and including termination." Moreover, while Officer Mikkelsen testified that he never received the Handbook, he signed an acknowledgment indicating that he had received same on May 4, 2020.

Considering the foregoing, we find that the pre-termination letter provided Officer Mikkelsen notice and substance of the charges lodged against him. See **Dep't Pub. Safety and Corr. v. Savoie**, 569 So.2d 139, 142 (La.App. 1 Cir. 1990) ("[N]otice is sufficient if it apprises the employee of the nature of the charges and general substance of the evidence against him.") Also, both the pre-termination and final disciplinary notices provided Officer Mikkelsen with specificity as to the date, times, and alleged duration he was at the Safehouse while he purportedly should have been patrolling his assigned area. See **Lazard**, 2015 WL 1882664 at *3. Given the detail provided in the notices and Officer Mikkelsen's entitlement to a full evidentiary hearing post-termination, we conclude that the Commission did not err in concluding that SLFPA-E complied with Civil Service Rules 12.7 and 12.8. Accordingly, the first assignment of error is without merit.

9

<u>Lack of Cause for Discipline</u>

In the second assignment of error, Officer Mikkelsen contends that the Commission's decision upholding the termination was manifestly erroneous because testimony established that he did not violate SLFPA-E policy. He maintains that SLFPA-E used circumstantial and speculative evidence to purportedly show that he was in the Safehouse while he should have been patrolling in order to justify discipline, and the Commission relied upon that same evidence in affirming the discipline.

Specifically, Officer Mikkelsen notes that the Commission, in its reasons, cited three specific periods during which Officer Mikkelsen purportedly remained at the Safehouse for extended durations—nearly three hours on May 20, nearly seven hours on May 26, and an additional ninety minutes on June 22. Officer Mikkelsen claims that he was in the Safehouse for nearly three hours on May 20, preparing food and performing administrative tasks, which he maintains is not out of the ordinary. Further, he asserts that while the daily recap sheet from May 20 showed only five entries, the recap is limited to actual incidents and would not include time spent patrolling. With regard to May 26, he acknowledged that he had no specific recollection on that date, and that there were only two calls on the recap sheet that "did stand out." Moreover, Officer Mikkelsen avers that while SLPA-E initially indicated that he spent nearly seven hours in the Safehouse on June 22, the Commission only found Officer Mikkelsen at the Safehouse for ninety minutes. Even so, Officer Mikkelsen avers that there were valid reasons to be at the Safehouse, including eating, preparing reports, or completing online training. Officer Mikkelsen contends the Commission manifestly erred by crediting allegations that were unsupported by concrete proof of misconduct.

Officer Mikkelsen also maintains that he, as well as one of his supervisors, were told that they could attach personal devices to the Safehouse's network. Officer Mikkelsen avers that an Xbox is a personal device, and while he did admit to connecting it to the Safehouse's network to download updates, Officer Mikkelsen testified that he never played games at the Safehouse. He emphasizes that there is no conclusive evidence that he used an Xbox gaming console during work hours and maintains that his presence at the Safehouse was limited to sanctioned activities. Accordingly, Officer

Mikkelsen concludes that SLFPA-E failed to meet its burden of proof to establish cause for discipline.

In contrast, SLFPA-E asserts that the termination was based on Officer Mikkelsen's repeated failure to perform his assigned patrol duties—not on whether he personally used an Xbox in the Safehouse. While the investigation did uncover Xbox usage during these shifts and it cannot be shown that it was in fact Officer Mikkelsen who was using the Xbox, SLFPA-E suggests that this issue is a red herring. Instead, SLFPA-E maintains that the critical issue was Officer Mikkelsen's prolonged absence from duty.

Specifically, Director Chandler testified that Officer Mikkelsen and his fellow officers were assigned to "patrol the levees, which is their main responsibility." Despite this primary duty, SLFPA-E avers that it cited specific evidence showing that Officer Mikkelsen spent hours at the Safehouse on multiple shifts despite having no assignment that justified his presence there. SLFPA-E notes the Commission found that Officer Mikkelsen, rather than patrolling his designated area, remained at the Safehouse for extended periods on May 20, May 26, and June 22, 2022. Considering the foregoing, SLFPA-E maintains that there is an adequate basis in the record to affirm the Commission's finding that legal cause existed for SLFPA-E's disciplinary action.

Credibility determinations are entitled to great deference and will not be disturbed on appeal absent manifest error. See **Falgout v. Am. Alt. Ins. Corp.**, 2023-1291 (La.App. 1 Cir. 6/27/24), 392 So. 3d 682, 685. Under the manifest error standard of review, we cannot not reweigh the evidence or substitute our own evaluations for those of the Commission. A factual finding may only be reversed if it is clearly wrong or lacks a reasonable factual basis in the record. **Stobart v. State, Dep't of Transp. & Dev.**, 617 So. 2d 880, 882 (La. 1993); **Rosell v. ESCO**, 549 So. 2d 840, 844 (La. 1989)

The Commission cited specific periods during which it found Officer Mikkelsen remained at the Safehouse for extended durations when he was assigned to active patrol. In reaching this finding, the Commission, in its reasons for judgment, indicated: "Captain Durnin accessed badge logs; the motion detector information; the pictures taken at the entry doors; and the pictures taken of the Safehouse parking lot for the dates referenced in [Mr. Mikkelsen's] disciplinary letters. He also took notes as to when [Mr. Mikkelsen]

11

entered the Safehouse." The Commission found that the "evidence and testimony establish [] that Mr. Mikkelsen spent an inordinate amount of time at the Safehouse on May 20, 2022, May 26, 2022[,] and June 22, 2022."

When questioned about these timeframes, the Commission found that Officer Mikkelsen offered vague and inconsistent explanations, frequently testifying that he could not recall the shift in question or offered speculative justifications—such as that he may have been eating, completing reports, or engaging in online training—without linking those activities to the duration of time spent in the Safehouse. The Commission contrasted this with Officer Mikkelsen's detailed testimony about other shifts, where he accounted for his time through report writing and responding to calls. The Commission concluded that Officer Mikkelsen's failure to recall or explain the extended time on the dates at issue undermined his credibility and supported a finding of dereliction of duty. Considering the record as a whole, we cannot conclude that the Commission's factual determinations are manifestly erroneous. See **Davis v. AMS Tube Corp.**, 2002-2427 (La.App. 1 Cir. 12/31/03), 868 So.2d 141, 146, writ denied, 2004-0286 (La. 3/26/04), 871 So.2d 354 ("[W]hen factual findings are based on witness credibility, the appellate court must give great deference to the fact-finder's decision to credit or discredit a witness's testimony.")

The Commission cited numerous provisions Officer Mikkelsen purportedly violated, but most notably, Subsection 7-D of the Handbook, which, as noted above, provides that an employee may be disciplined for failing to perform his assigned duties. The Commission found that Officer Mikkelsen repeatedly failed to patrol, which was his "main responsibility," thereby impairing SLFPA-E's efficient operation. Considering the foregoing, we cannot conclude that the Commission's finding that legal cause existed for disciplinary action was arbitrary, capricious, or an abuse of discretion. Accordingly, this assignment of error lacks merit.

Excessive or Disproportionate Penalty

Officer Mikkelsen contends that even if he committed infractions that warranted discipline, "termination was excessive and not commensurate with the infractions." Officer Mikkelsen avers that the time purportedly spent in the station was *de minimis*

12

relative to all of the shifts worked during the investigation, March 16, 2022 through October 21, 2022. Officer Mikkelsen avers that SLFPA-E did not offer any evidence to establish a real and substantial relationship between the alleged infraction(s) and an adverse impact on the efficient operation of the public service. Further, Officer Mikkelsen avers that he had never been the subject of any prior disciplinary action. Rather, Officer Mikkelsen testified that he had received excellent performance evaluations, had been promoted at the Levee District, had been awarded Officer of the Month multiple times, and had been presented with "Challenge Coins" for multiple arrests. Considering the foregoing, Officer Mikkelsen urges the court to find that termination was not warranted.

In opposition, SLFPA-E asserts that the Commission did not abuse its discretion in affirming Officer Mikkelsen's termination. SLFPA-E avers that Officer Mikkelsen was a police officer working the night shift, and he was entrusted to report to work and do the job for which he was hired—to keep the public safe. SLFPA-E maintains that "[n]o one was present at night to look over the shoulders of the C [Platoon] and supervise [them]," and they "go out among the public where they must be their own accountability." SLFPA-E asserts that Officer Mikkelsen destroyed any trust that he would carry out his duties if unsupervised. SLFPA-E maintains that the risks "cannot be downplayed by claiming that, other than when he failed to do his job, [Officer] Mikkelsen was a good employee." SLFPA-E avers that exposing it "and the public to extremely serious risks cannot be countenanced, particularly by a member of law enforcement." SLFPA-E suggests that dismissal was appropriate under the circumstances.

Termination from permanent employment is the most extreme form of disciplinary action that can be taken against a classified employee. See **Honoré v. Dep't of Public Works**, 2014-0986 (La.App. 4 Cir. 10/29/15), 178 So.3d 1120, 1131, writ denied, 2015-2161 (La. 1/25/16), 185 So.3d 749. The Commission has a duty to decide whether the punishment imposed is commensurate with the dereliction. **Guillory v. Dep't of Transp. & Dev.**, 475 So.2d 368, 370-71 (La.App. 1 Cir. 1985). As noted above, when making this determination, an appellate court should not modify the Commission's order unless it is arbitrary, capricious, or an abuse of discretion. **Kirk**, 147 So.3d at 204, citing **Bannister**, 666 So.2d at 647.

13

At the hearing, Director Chandler testified that Officer Mikkelsen's conduct "impeded the safety of the community" and "impacted the ability to maintain security on [SLFPA-E's] assets." Further, the final disciplinary notice similarly indicated that as a police officer for C Platoon, Officer Mikkelsen was "expected to patrol assigned areas to prevent crime and ensure protection of life and property during [his] entire shift with the exception of permissible breaks as defined by the Police Communication Signals. ... [His] actions endangered the citizens of Jefferson, Orleans and St Bernard parishes by not conducting [his] assigned patrols[.]" Similarly, the Commission found that "[Officer] Mikkelsen's failure to patrol his designated areas exposed the agency to further potential impairment. If an incident had occurred on [Officer] Mikkelsen's patrol route when he was not patrolling it could have led to destruction of life and/or property." The Commission found that "[s]uch behavior is manifestly detrimental to the state service and simply cannot be tolerated." Given the substantial relationship between the improper conduct and the efficient operation of the public service, we cannot conclude the Commission's ruling affirming the termination was arbitrary, capricious, or an abuse of discretion. This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the August 1, 2024 Civil Service Commission decision. Costs of this appeal are assessed to appellant, Alex Mikkelsen.

**AFFIRMED.**